UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E*HEALTHLINE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHARMANIAGA BERHAD and MODERN INDUSTRIAL INVESTMENT HOLDING GROUP COMPANY LIMITED,<br><br>Defendants. | No. 2:18-cv-01069-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

In this case Plaintiff E*Healthline ("EHL") pursues one cause of action, misappropriation of trade secrets and confidential information, arising out of a memorandum of collaboration for a potential joint venture to develop a pharmaceutical facility in Saudi Arabia against Defendants Pharmaniaga Berhad ("Pharmaniaga") and Modern Industrial Investment Holding Group Company Limited ("Modern"), collectively "Defendants." Presently before the Court is Pharmaniaga's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] ECF No. 20. Plaintiff filed a timely Opposition to Pharmaniaga's Motion ("Opposition") to

---

[1] Unless otherwise noted, subsequent references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1

which Pharmaniaga filed a Reply. ECF Nos. 33, 36. For the reasons set forth below, Defendant's Motion is GRANTED with leave to amend.[2]

**BACKGROUND**

EHL is a Delaware corporation that provides healthcare and pharmaceutical information management technology software and services and is headquartered in Sacramento, California. Pharmaniaga is a Malaysian corporation headquartered in that country. It is engaged in the business of development and sales of pharmaceutical products, medical products, and hospital equipment. Modern is a privately-owned investment company established under the laws of and headquartered in Saudi Arabia.

In April 2011, EHL contacted Pharmaniaga regarding whether Defendant would be interested in a joint venture in Saudi Arabia. Compl., ¶ 44. In the ensuing months, EHL, Pharmaniaga and Modern discussed the possibility of constructing and managing a pharmaceutical manufacturing plant in Saudi Arabia. Id. ¶¶ 32-122.

As part of the parties deliberations over the proposed venture, EHL and Defendants signed non-disclosure agreements, containing a forum-selection clause which provided for dispute resolution in Singapore, under Singaporean law. Id. ¶¶ 46, 50. Pharmaniaga executed a Non-Disclosure Agreement ("NDA") in Malaysia on June 17, 2011. Id. ¶ 59. In addition, EHL and Modern entered into a "Non-Disclosure, Non-Circumvention and Non-Competition" Agreement on July 25, 2011. Id. ¶ 71.

The majority of communications regarding the proposed joint venture occurred over the phone or teleconference or via email. Id. ¶¶ 35-37, 39-47, 44, 45, 47, 48, 50-52, 57, 60, 66, 70, 75-81, 96, 101, 103, 105, 107, 118, 119, 122-124, 128, 130, 132, 133, 135, 139-141, 143, 146, 149. In addition, Pharmaniaga repeatedly declined EHL's requests to meet in California, instead suggesting London and Riyadh as more

---

[2] Because oral arguments would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

convenient locations. Id. ¶¶ 76, 88, 89, 91, 93. Eventually, Pharmaniaga agreed to one in-person meeting to take place in Sacramento, California, and Pharmaniaga sent two now former employees to California over a weekend in October. Id. ¶¶ 94-95. EHL did not share confidential information at that meeting, nor was any agreement reached. Id. ¶¶ 95, 97; Affidavit of Wan Intan Idura Wan Ismail ("Idura Aff.") ¶¶ 17-18. Indeed, EHL does not allege in its Complaint that any improprieties or deception occurred over this meeting. Compl. ¶¶ 95-96.

Eventually, on October 27, 2011, Plaintiff EHL and Defendants entered into a Memorandum of Collaboration ("MOC") in Germany. Id. ¶ 110. The MOC contained confidentiality obligations and provided for dispute resolution in London under the Rules of Arbitration of the International Chamber of Commerce. See Idura Aff. ¶ 21, Ex. 2 at §§17.1, 17.2. Sometime later, Modern informed Pharmaniaga that it was no longer doing business with EHL. Idura Aff. ¶ 23. According to Pharmaniaga, the MOC then lapsed after 30 days and so did the joint venture between the three parties. See Motion at 5.

In May 2013, Pharmaniaga announced that it had entered into a new joint venture with Modern to explore the potential construction and operation of a pharmaceutical facility in Saudi Arabia. Compl. ¶ 151. Plaintiff was not aware it had been excluded from the project until Defendant's announcement. Id. Regardless, this new joint venture was eventually abandoned by Defendants. Idura Aff. ¶ 24. They did not build a pharmaceutical facility and no sales or revenues resulted from this announcement. Id.

A year later, in May 2014, EHL filed a request for arbitration in London against Defendants alleging misappropriation of confidential information, breaches of various contracts, and common law tort claims under the law of England and Wales as provided by the MOC. Compl. ¶ 152. All claims were fully litigated with the parties offering extensive briefing, exhibits, experts and various reports. Idura Aff. Ex. 3 ("Final Award") ¶¶ 1.15-1.30.

///

3

After two years of arbitration, the Tribunal issued an award on November 2, 2016. Compl. ¶ 153. The Tribunal rejected Plaintiff's claims, and found Defendants to be both the prevailing parties and entitled to attorneys' fees and arbitration costs totaling GB£ 2,000,000.00 (plus interest) and US$ 872,953.00 (plus interest). Final Award ¶¶ 6.33-6.34.

Despite having initiated the arbitration itself, EHL nonetheless refused to pay the fees ordered and, in December 2017, Defendant Pharmaniaga was forced to bring an enforcement action in this Court for the purpose of enforcing the Final Award. Id. ¶ 26. On September 7, 2017, this Court issued an order in that case confirming the award and directing EHL to make the ordered payments. See Case No. 2:17-cv-02672-MCE-EFB.

Beyond the foregoing, there have been no other business contacts between Pharmaniaga and the state of California. Pharmaniaga has never been authorized to do business in California and never has had an agent for the service of process within the state. It never has solicited business in California, never signed any contract in California, never had any employee based here, and never recruited any employee in this state. Finally, Pharmaniaga has never owned, leased, rented, or otherwise, any real property in California and has never maintained an office here.

## STANDARD

A judgment rendered in violation of due process is void, and due process requires that a defendant be subject to the personal jurisdiction of the court. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Pennoyer v. Neff, 95 U.S. 714, 732–733 (1878); Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Wash. Shoe Co. v. A–Z Sporting Goods Inc., 704 F.3d 668, 671 (9th Cir. 2012) (citation omitted). However, when the defendant's motion is based on written materials rather than an

evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts" to withstand the motion to dismiss. Id. at 672 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. Wash. Shoe, 704 F.3d at 672.

Where, as here, there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). California Code of Civil Procedure section 410.10, California's long-arm statute, is "coextensive" with federal due process requirements. Id. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." Id.

There are two categories of personal jurisdiction from a due process perspective: general and specific. A court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum are "substantial" or "continuous and systematic." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). The standard for establishing general jurisdiction is an exacting standard that requires the defendant's contacts to approximate physical presence in the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). Specific personal jurisdiction, on the other hand, exists when a defendant's "in-state activity is continuous and systematic and that activity gave rise to the episode-in-suit." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (U.S. 2011) (citing Int'l Shoe, 326 U.S. 317) (internal quotation marks omitted). However, "the commission of certain 'single or occasional acts' in a State may be sufficient to render a [defendant] answerable in that State with respect to those acts . . . ." Id. (citation omitted).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

Pharmaniaga correctly asserts that its contacts with this state are insufficient to establish general personal jurisdiction, and EHL does not contend otherwise. Accordingly, the Court addresses here only the parties' dispute as to whether Pharmaniaga's minimal contacts are sufficient to subject it to the specific jurisdiction of this Court.

It is undisputed that Pharmaniaga has no place of business in California and never has been licensed to do business in this state. At base, Pharmaniaga's contacts with California consisted only of sending two now-former employees for a joint-venture exploration meeting at EHL's behest and initiating the enforcement action filed in this Court. As explained below, these contacts are insufficient to establish jurisdiction here.

The Ninth Circuit employs a three-part test to determine whether a non-resident has sufficient minimum contacts to be subject to specific personal jurisdiction: i) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby

invoking the benefits and protections of its law; ii) the claim must be one which arises out of or relates to the defendant's forum-related activities; and iii) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Wash. Shoe, 704 F.3d at 672. If the plaintiff satisfies the first two elements, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

A plaintiff may satisfy the first part of the minimum contacts test by demonstrating that the defendant "either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." Wash. Shoe, 704 F.3d at 672. In cases sounding in tort, courts typically apply the purposeful direction or "effects test," which requires that the defendant have: 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state. Id. at 673. The effects test allows a court to exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside the forum state. Id.; see also Goodyear Dunlop Tires, 131 S. Ct. at 2857 (citing Calder v. Jones, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)) ("When a defendant's act outside the forum causes injury in the forum . . . a plaintiff's residence in the forum may strengthen the case for the exercise of specific jurisdiction.") "In applying this test, a court must look at the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (internal bracketing and quotations omitted). Therefore, "mere injury to a forum resident is not a sufficient connection to the forum." Id. at 1125. Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id.

In the context of the effects test, the Ninth Circuit defines an intentional act as "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe, 704 F.3d at 674.

7

In <u>Washington Shoe</u>, the Ninth Circuit found that the defendant committed an intentional act "by intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing boots . . . ." <u>Id.</u> Here, Pharmaniaga committed an intentional act by sending two non-decision-making employees to California for a weekend and communicating through telephone calls with EHL for a period of time while exploring the potential for an overseas joint venture. Thus, EHL has shown that Pharmaniaga satisfies the first element of the effects test.

From there, however, EHL's arguments fail. The expressly aimed requirement of the effects test is met when the defendant's allegedly tortious action was "expressly aimed at the forum." <u>Picot</u>, 780 F.3d 1214 (quoting <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1129 (9th Cir. 2010). The analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." <u>Picot</u>, 780 F.3d 1214. Furthermore, a plaintiff's injury must be "tethered to [the forum state] in [a] meaningful way," and "the plaintiff cannot be the only link between the defendant and the forum." <u>Walden</u>, 134 S. Ct. 1122, 1125.

According to EHL, and against that backdrop, Pharmaniaga expressly aimed its conduct at this forum when it: (1) filed a motion for enforcement of judgment to confirm the ICC arbitral award; (2) sent two executives to EHL's headquarters in Sacramento; and (3) "purposely directed their tortious action at California and engag[ed] in [misappropriation of confidential information] targeted at a plaintiff whom Pharmaniaga and Modern knew to be a resident of California." Opp. at 5. However, while it is clear that Pharmaniaga knew EHL was a business in California, Plaintiff has not put forth sufficient information to show that Defendant Pharmaniaga expressly aimed their conduct related to its misappropriation of confidential information claim at California.

First, the enforcement action is insufficient to establish a minimum contact or activity for purposes of personal jurisdiction. Pharmaniaga did not choose to avail itself of the protections of this Court but was forced by EHL itself to petition this Court for confirmation only after EHL repeatedly refused to fulfill its obligations to comply with the

Tribunal's decision.  In addition, Pharmaniaga does not, by way of the enforcement action seek to relitigate the claims involved in the London arbitration.  Accordingly, that contact does not support an exercise of jurisdiction in this case.  See China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc., 379 F.3d. 796, 799 (9th Cir. 2004); Dow Chem. Co. v. Calderon, 422 F.3d. 827, 836 (9th Cir. 2005)

Second, it was EHL who reached out to Pharmaniaga in Malaysia for the business opportunity.  Pharmaniaga repeatedly declined to come to California for a meeting, and instead proposed London or Riyadh for exploratory discussions.  Nor does Plaintiff specifically contend that any confidential information was misappropriated at the one California meeting.  Moreover, all choices of law, potential plans, and discussions were based on an entirely overseas venture, with no contemplation that California would play a role in any of it.  Finally, there was no harm (loss of profits) as no pharmaceutical facility in Saudi Arabia was ever built by Defendants.  In sum, EHL has failed to show any significant activities from Pharmaniaga directed at the forum and its attempt to hail Pharmaniaga into this Court fails.  See Picot v. Weston, 780 F. 3d 1206 (9th Circ. 2015).

## CONCLUSION

For the reasons stated above, Pharmaniaga's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 20) is GRANTED with leave to amend.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file an amended complaint.  If no amended complaint is filed, the causes of action dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  October 23, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE