ANDREW S. AZARMI (Bar No. 241407)
andrew.azarmi@dentons.com
SAMUEL E. KOHN (Bar No. 304881)
samuel.kohn@dentons.com
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, California 94105
Telephone:     (415) 267-4000
Facsimile:      (415) 267 4198

CHARLES H. CAMP (*Pro Hac Vice*)
ccamp@charlescamplaw.com
CAMELLIA MOKRI
cmokri@charlescamplaw.com
LAW OFFICES OF CHARLES H. CAMP, P.C.
600 New Hampshire Avenue NW
Suite 640
Washington, D.C. 20037
Telephone:     (202) 457-7786
Facsimile:      (202) 457-7788

Attorneys for Plaintiff
E*HEALTHLINE.COM, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| E*HEALTHLINE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHARMANIAGA BERHAD, a Malaysian entity, and MODERN INDUSTRIAL INVESTMENT HOLDING GROUP COMPANY LIMITED, a Saudi Arabian entity,<br><br>Defendants. | Case No. 2:18-cv-01069-MCE-EFB<br><br>Hon. Morrison C. England, Jr.<br><br>**PLAINTIFF E*HEALTHLINE.COM, INC.'S OPPOSITION TO DEFENDANT PHARMANIAGA BERHAD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing:   Vacated by Court<br>Time:        Vacated<br>Courtroom:  7 |

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- i -

110767410\V-1

1

## TABLE OF CONTENTS

2

**Page**

3   I.    INTRODUCTION ........................................................................................1

4   II.   STANDARD OF REVIEW FOR MOTIONS TO DISMISS ...........................1

5   III.  ARGUMENT ..............................................................................................2

    A.    Pharmaniaga Is Subject To Specific Jurisdiction In This Forum. ...........2

6
        1.  Purposeful Direction. ...................................................................2

7
        2.  EHL's Claim Arises Out Of Pharmaniaga's Forum-Related

8           Activities. ....................................................................................6

9       3.  Pharmaniaga Has Not Met Its Burden To "Present A Compelling
            Case" That The Exercise Of Jurisdiction Would Be Unreasonable. ...7

10  B.    Alternatively, Specific Jurisdiction Exists Under Fed. R. Civ. P. 4(k)(2)...7

11      1.  Pharmaniaga Expressly Aimed Activities Toward the United States..........8

12      2.  EHL's Claims Arise Out Of Pharmaniaga's United States
            Activities. ....................................................................................8

13      3.  Pharmaniaga Has Not Met Its Burden To "Present A Compelling
            Case" That The Exercise Of Jurisdiction Would Be Unreasonable. ...9

14
    C.    The Forum-Selection Clause Does Not Require Dismissal Of EHL's
15        Claims Because This Court Is The Most Appropriate Forum For EHL's
          Lawsuit. .........................................................................................9

16
    D.    Issue Preclusion Does Not Bar EHL's Claims Because The Tribunal's
17        Finding Of No Jurisdiction To Decide EHL's CUTSA Claim Does Not
          Collaterally Estop The Merits Of The SAC Claims. ..............................12

18
    E.    The Limitations Have Not Run On EHL's CUTSA, DTSA And RICO
19        Claims. ..........................................................................................15

20  F.    EHL's DTSA And RICO Claims Are Well Founded As Both Apply To
          Continuing Misappropriations Of Trade Secrets, Including Use And
21        Possession Of Trade Secrets Stolen Prior To DTSA's Effective Date...................18

22  CONCLUSION..........................................................................................20

23

24

25

26

27

28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Techs., Inc. v. Commc'ns Workers of America*,
    475 U.S. 643 (1986)............................................................................14

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*,
    No. 16-cv-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) .........................18

*Brayton Purcell, Inc. v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010) ..........................................................3

*Calder v. Jones*,
    465 U.S. 783 (1984),......................................................................2, 3

*California Brewing Co. v. 3 Daughters Brewing Co., LLC*,
    No. 2:15-cv-02278, 2016 WL1573399 (E.D. Cal. April 19, 2016)..................4

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .........................................................10

*CBF Industria de Gusa v. AMCI Holdings, Inc.*,
    850 F.3d 58 (2d Cir. 2017) .............................................................13

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
    No. 16-CV-33, 2017 WL 6210920 (N.D. Iowa Dec. 8, 2017) .......................15

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ....................................................1, 5, 8

*DiFederico v. Marriott Int'l, Inc.*,
    714 F.3d 796 (4th Cir. 2014) ..........................................................10

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir.2009) .........................................................11

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ..........................................................9

*Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty. Ltd.*,
    290 F. Supp. 3d 923 (N.D. Cal. 2017)..................................................4

*Elkins v. Derby*,
    12 Cal. 3d 410 (1974)...................................................................16

*Enertrode, Inc. v. Gen. Capacitor Co. Ltd*,
    No. 16-cv-02458, 2016 WL 7475611 (N.D. Cal. Dec. 29, 2016) ..............*passim*

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- iii -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
    35 Cal. 3d 312 (1983) ........................................................................................... 15

*Fanucci v. Allstate Ins. Co.*,
    638 F. Supp. 2d. 1125 (N.D. Cal. June 30, 2009)................................................. 18

*Genentech, Inc. v. JHL Biotech, Inc.*,
    2019 U.S. Dist. LEXIS 36140 (Mar. 1, 2019) ................................................ 7, 19

*In Re Harmon*,
    250 F.3d 1240 (9th Cir. 2000) .............................................................................. 12

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ................................................................................ 2

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)................................................................................................. 2

*Hohu v. Hatch*,
    940 F. Supp. 2d 1161 (N.D. Cal. 2013) ................................................................ 12

*Hoxworth v. Blinder, Robinson & Co.*,
    980 F.2d 912 (3d Cir. 1992) ................................................................................. 16

*Integral Dev. Corp. v. Weissenbach*,
    99 Cal. App. 4th 576 (2002) ................................................................................. 11

*J.G. Boswell Tomato Co.--Kern, LLC v. Private Label Foods, Inc.*,
    No. 08-CV-00620, 2008 WL 3155041 (E.D. Cal. Aug. 4, 2008)............................ 1

*L.A. Gem & Jewelry Design, Inc. v. An & Assocs. Co. Inc.*,
    17-cv-2417, 2017 WL 6209816 (C.D. Cal. Dec. 6, 2017) ...................................... 8

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) .................................................................................. 9

*Marcario v. Cnty. of Orange*,
    155 Cal. App. 4th 397 (2007) ............................................................................... 16

*Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*,
    245 F.3d 1203 (10th Cir. 2001) ............................................................................ 14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ................................................................................ 2

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
    45 Cal. 4th 88 (2008) ............................................................................................ 17

*Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) .................................................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- iv -

110767410\V-1

*O2 Micro Intern. Ltd. v. Monothlithic Power Sys., Inc.*,
420 F. Supp. 2d 1070 (N.D. Cal. 2006) .................................................................................. 3

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .............................................................................................. 11

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ................................................................................................ 8

*Physician's Surrogacy, Inc. v. German*,
2018 WL 638229 (S.D. Cal. Jan. 31, 2018) .......................................................................... 19

*Robles v. Comtrak Logistics, Inc.*,
No. 13-cv-00161, 2015 WL 1530510 (E.D. Cal. Apr. 3, 2015) ............................................ 11

*Rodriguez v. S. Cal. Dist. Council of Laborers*,
160 Cal. App. 3d 956 (1984) ................................................................................................ 17

*SanDisk Corp. v. SK Hynix Inc.*,
84 F. Supp. 3d 1021 (N.D. Cal. 2015) .................................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............................................................................................ 2, 7

*Space Data Corp. v. Alphabet Inc.*,
No. 16-cv-03260, 2017 WL 9840133 (N.D. Cal. Dec. 18, 2017) ........................................ 19

*Telesocial Inc. v. Orange S.A.*,
No. 14-CV-03985, 2015 WL 1927697 (N.D. Cal. Apr. 28, 2015) ........................................ 11

*Teradata Corp. v. SAP SE*,
2018 U.S. Dist. LEXIS 209872 (N.D. Cal. Dec. 12, 2018) .................................................. 19

*United States v. Zhang*,
No. 5:05-cr-00812, 2012 WL 1932843 (N.D. Cal. May 29, 2012) .................................. 16, 20

*Vance's Foods, Inc. v. Special Diets Europe Ltd.*,
No. 2-11-cv-02934, 2012 WL 1353898 (E.D. Cal. April 16, 2012) ....................................... 7

*Vandenberg v. Superior Court*,
21 Cal. 4th 815 (Cal. 1999) .................................................................................................. 13

*Verrees v. Davis*,
No. 16-CV-01392, 2018 WL 1919824 (E.D. Cal. Apr. 24, 2018) .................................... 15, 16

*Walden v. Fiore*,
571 U.S. 277, 277-78 (2014 .................................................................................................... 3

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*,
704 F.3d 668 (9th Cir. 2012) .................................................................................................. 2

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

*Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) (per curiam) ..............................................................3

**Statutes**

18 U.S.C.
    § 1831 ..............................................................................................................16, 19
    § 1836(d) ....................................................................................................................15
    § 1836, *et seq.* ..............................................................................................................1
    § 1961(5) ....................................................................................................................16
    § 1961, *et seq.* ..............................................................................................................1

California Civil Code
    § 3426, *et seq.* ..............................................................................................................1
    § 3426.6 ....................................................................................................................16

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 4(k)(2) ........................................................................................................7, 8, 9
    Rule 12(b)(2) ................................................................................................................1
    Rule 41(b) ....................................................................................................................14

**Other Authorities**

Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations Ch. 6-B ¶ 6:60 ....................17

Section 4(3) of the Singapore Foreign Limitation Periods Act ........................................10

Singapore Foreign Period Limitation Act, ch. 11A, § 4(3), *available at*
    https://sso.agc.gov.sg/Act/FLPA2012 ........................................................................10

Singapore Limitation Act, *available at* https://sso.agc.gov.sg/Act/LA1959................................10

Trade Secret Policy of the USPTO, https://www.uspto.gov/patents-getting-
    started/international-protection/trade-secret-policy (last accessed April 12,
    2019) ..............................................................................................................................11

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1    Plaintiff E*HealthLine.com, Inc. ("EHL") opposes Defendant Pharmaniaga Berhad's

2    ("Pharmaniaga") Motion to Dismiss Second Amended Complaint, Dkt. 65, (the "Motion" or "Mot."), which

3    was amended on March 11, 2019, to add additional fact allegations against Defendants Pharmaniaga and

4    Modern Industrial Investment Holding Group Company Limited ("Modern") in support of EHL's California

5    Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA"), Federal Defend Trade Secrets Act, 18

6    U.S.C. §§ 1836, *et seq.* ("DTSA") and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§

7    1961, *et seq.* ("RICO").

8    **I.      INTRODUCTION**

9    Sacramento-based EHL filed this trade secret lawsuit against Pharmaniaga and Modern after an ICC

10   arbitration tribunal found that it did not have jurisdiction to rule on EHL's statutory trade secrets claims and

11   therefore was powerless to render any decision on those claims. To date, ***no*** decision-maker has ***ever*** ruled on

12   the merits of EHL's claims.

13   In this Court's prior dismissal orders, it dismissed EHL's Complaint on the ground that it did not

14   believe it had jurisdiction over Pharmaniaga. Dkts. 38, 63.  EHL's Second Amended Complaint ("SAC")

15   expands the fact allegations, including the jurisdictional allegations. *E.g.,* Dkt. 64, at ¶¶ 39, 47, 80, 92, 98, 114,

16   120-22, 187-91, 212-16, 227-28, 238-40.  In deciding personal jurisdiction at this juncture, the Court is legally

17   obligated to take EHL's uncontroverted allegations as true and decide any factual dispute in favor of EHL.

18   EHL's allegations and evidence together demonstrate that this Court has specific personal jurisdiction over

19   Pharmaniaga under controlling Supreme Court and Ninth Circuit precedent.  At the very minimum, EHL is

20   entitled to conduct jurisdictional discovery.

21   Pharmaniaga's other arguments for dismissal also fail and thus its motion should be denied.

22   **II.     STANDARD OF REVIEW FOR MOTIONS TO DISMISS**

23   When deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

24   "the court reviews the pleadings and affidavits, upon which the plaintiff need only make a prima facie showing

25   that personal jurisdiction exists." *J.G. Boswell Tomato Co.--Kern, LLC v. Private Label Foods, Inc.*, No. 08-

26   CV-00620, 2008 WL 3155041, at *3 (E.D. Cal. Aug. 4, 2008). Where "the defendant's motion is based on

27   written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of

28   jurisdictional facts to withstand the motion to dismiss." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

110767410\V-1

1066, 1073 (9th Cir. 2011). "At this stage of the proceeding, "uncontroverted allegations in plaintiff's complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ("[Plaintiff]'s version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

## III.   ARGUMENT

### A.   Pharmaniaga Is Subject To Specific Jurisdiction In This Forum.[1]

"Specific jurisdiction" encompasses cases in which the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). EHL alleges that this case arises out of Pharmaniaga's contacts with California, which is sufficient to make a *prima facie* case of specific jurisdiction that withstands Pharmaniaga's motion to dismiss. *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012).

The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-cv-02458, 2016 WL 7475611, at *3 (N.D. Cal. Dec. 29, 2016). EHL bears the burden to establish the first two prongs: "[i]f the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1.   Purposeful Direction.

The first prong, purposeful direction, is established under the "'effects test' of *Calder v. Jones*, 465

---

[1] EHL did not allege general personal jurisdiction in the SAC.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

U.S. 783 (1984)," *Enertrode*, 2016 WL 7475611, at *4, which requires "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (per curiam).

### a.   This Court Found Pharmaniaga Committed An Intentional Act.

"Intent" in this context "refer[s] to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell, Inc. v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (citations omitted). "[M]isappropriation of trade secrets is an intentional tort." *O2 Micro Intern. Ltd. v. Monothlithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1091 (N.D. Cal. 2006) (citations omitted).

This Court already found that "Pharmaniaga committed an intentional act by sending two key non-decision making employees to California for a weekend and communicating through telephone calls with EHL for a period of time while exploring the potential for an overseas joint venture." Dkt. 38 at 8:3-7. That is not the end of the story. During that meeting in California, Pharmaniaga became determined to pursue EHL's technology and know-how so that it could exploit it for its own benefit, and began an effort to cultivate an ongoing relationship with California-based EHL to gain access to EHL's technology. Dkt. 64, at ¶¶ 39, 120-24.

### b.   Pharmaniaga's Acts Were Expressly Aimed At The Forum.

In *Calder v. Jones*, a leading Supreme Court case on specific jurisdiction, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer in Florida. 465 U.S. 783, 788-89 (1984). The Court held that jurisdiction in California was proper because the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. *Id.*

In *Walden v. Fiore*, the Supreme Court distinguished *Calder* in a case where "[n]o part of petitioner's course of conduct occurred in Nevada." 571 U.S. 277, 277–78 (2014). Judge Tigar of the Northern District of California explained the rationale behind *Walden* in concluding that an Australian company (with virtually no contacts with California) would be subject to specific personal jurisdiction in the Northern District:

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 3 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

The *Walden* court found no personal jurisdiction because there was no conduct in the forum state, and the only connection between the defendant and that forum was the harm the plaintiffs felt, which could have been felt in any state. Plaintiffs filed suit in Nevada in response to the defendant seizing their gambling winnings as they attempted to board a plane from Georgia to Nevada. The conduct in question occurred in Georgia, not in Nevada. The defendants did nothing to reach out to the plaintiffs in Nevada—the forum state—and the plaintiffs maintained residences in both Nevada and California. The Court found that the harm at issue, the deprivation of money, was not "tethered to Nevada in any meaningful way" because it would have been felt in any state the plaintiffs chose to be in (and the plaintiffs in fact maintained residences in multiple states). In short, *Walden* stands for the proposition that a defendant's relationship to the forum must rely on something other than merely "random, fortuitous, or attenuated contacts."

*Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty. Ltd.*, 290 F. Supp. 3d 923, 935-36 (N.D. Cal. 2017) (holding specific personal jurisdiction existed over Australian company despite limited contacts between the Australian company and the forum state). Here, Pharmaniaga targeted a forum resident, EHL, while simultaneously targeting the forum, California, itself. *E.g.*, Dkt. 64, at ¶¶ 26, 30,  35-6, 39, 47, 58, 80, 92, 98, 114,  120-24, 145, 187-91.

This "express aiming" analysis is tort specific:

The second prong of the purposeful direction inquiry is whether the defendant expressly aimed its act at the forum state. "The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue. ***In intellectual property       cases, "the Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located  the forum state.*** Courts often refer to this theory of specific jurisdiction as "individualized targeting" of the plaintiff.

*California Brewing Co. v. 3 Daughters Brewing Co., LLC*, No. 2:15-cv-02278, 2016 WL1573399, at *3 (E.D. Cal. April 19, 2016) (finding defendants expressly aimed their conduct at California in part because defendants sold their goods to third parties with the intent to develop a national market, including in California) (citations omitted and emphasis added). Here, EHL alleges Pharmaniaga intentionally sought to cultivate an ongoing relationship with Sacramento-based EHL to gain access to EHL's intellectual property and infringe EHL's rights in that intellectual property for its own benefit, knowing all the while that EHL is a California entity.

- 4 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1   *E.g.,* Dkt. 64, at ¶¶ 39, 47, 120-24, 145, 187-91.

2   Pharmaniaga argues that its acts were not directed at the forum. Mot., pp. 9-10. But EHL specifically

3   alleges that Pharmaniaga deliberately initiated and cultivated an ongoing business relationship with EHL,

4   including visiting EHL in California, participating in more than fifty (50) telephone calls lasting over seventy-

5   five (75) hours with EHL in California, exchanging hundreds of e-mails with EHL in California, and hiring

6   Kroll to investigate EHL in California. *E.g.*, Dkt. 64, at ¶¶ 39, 47, 80, 92, 98, 114, 120-22, 187-91.

7   Pharmaniaga indisputably directed its activities at California when it intentionally cultivated a relationship with

8   EHL to gain access to EHL's trade secrets, knowing that EHL is a California forum resident.

9   Pharmaniaga also entered into the NDA with EHL in California. It is out of this NDA, as well as

10   numerous oral agreements to maintain confidentiality (*e.g.*, Dkt. 64, at ¶¶ 26, 35, 36, 57-8, 62, 80-1, 83, 92-3,

11   125) that Pharmaniaga misappropriated EHL's trade secrets. Although this is not a breach of contract action,

12   these agreements are the source of Pharmaniaga's obligations to EHL in California. The SAC alleges that

13   Pharmaniaga knew it was misappropriating trade secrets belonging to a California business, by expressly

14   aiming its activities at a California resident. *E.g.*, Dkt. 64, at ¶¶ 26, 30,  35-6, 39, 47, 58, 80, 93, 98, 114,  120-

15   24, 145, 187-91.  This establishes that Pharmaniaga aimed its misappropriation at this forum.

16   **c.      Pharmaniaga Knew The Harm Would Be Suffered In California.**

17   The third element of the three-part test for purposeful direction is that Pharmaniaga knew that the harm

18   from its misappropriation was likely to be suffered in the forum. EHL alleges that it suffered damages because

19   of Pharmaniaga's misappropriation. Dkt. 64, at ¶¶ 212-16, 227-28, 238-40. The Ninth Circuit has "repeatedly

20   held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of

21   business." *CollegeSource, Inc.*, 653 F.3d at 1079. EHL's principal place of business is in this forum, and this

22   is where EHL suffered damages. *Enertrode*, a post-*Walden* Northern District of California case on specific

23   jurisdiction over a misappropriation of trade secrets case, is instructive:

24      Plaintiff submits evidence that Zheng knew that Plaintiff was a California
        corporation with its principal place of business in California . . . Plaintiff
25      alleges that it suffered economic damage as a result of Defendants' willful
        misappropriation . . *a corporation incurs economic loss, for jurisdictional*
26      *purposes, in the forum of its principal place of business.* As such, Plaintiff
        has sufficiently established that Zheng and GC LLC knew that the harm
27      caused by their trade secret misappropriation likely would be felt in
        California.

28

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

1   *Enertrode*, 2016 WL 7475611, at *4 (citations omitted) (emphasis added).

2         Pharmaniaga continues to misappropriate EHL's trade secrets. Pharmaniaga is alleged to have known,

3   and certainly did know after its visit to EHL's offices in Sacramento, California, that EHL was a forum

4   resident. Dkt. 64, ¶¶ 120-22. This meets the third element of purposeful direction.

5         **2.**      **EHL's Claim Arises Out Of Pharmaniaga's Forum-Related Activities.**

6         The second prong of the Ninth Circuit's three-part test for specific jurisdiction is that EHL's claim

7   must have arisen out of or related to Pharmaniaga's forum-related activities. Despite Pharmaniaga's

8   contentions, Mot., p. 4, the SAC contains new jurisdictional allegations addressing Pharmaniaga's link to

9   California and the United States. Dkt. 64, at ¶¶ 47, 121-24, 187-91.

10        "The Ninth Circuit relies on 'a "but for" test to determine whether a particular claim arises out of

11  forum-related activities and thereby satisfies the second requirement for specific jurisdiction.'" *Enertrode*,

12  2016 WL 7475611, at *5 (internal citations omitted). Here, it is the misappropriation of EHL's trade secrets—

13  which Pharmaniaga directed at California—that is the "but for" cause of EHL's injury in this forum.

14        Pharmaniaga mischaracterizes this Court's position on EHL's factual allegations—specifically

15  ignoring the fact that EHL provided additional details to supplement allegations that the Court previously found

16  insufficient. Mot., p. 5.[2] The SAC provides details about the confidential information shared during the

17  meetings at EHL's offices in Sacramento and how, at that meeting, Pharmaniaga became infatuated with

18  EHL's technology and know-how, and began an effort to cultivate a relationship with EHL so that it could

19  gain access to and exploit EHL's trade secret and proprietary information for its own gain. *E.g.,* Dkt. 64, at ¶¶

20  39, 120-22; 124, 128.[3]

---

21  [2] Pharmaniaga mischaracterizes numerous "key facts" that it alleges controlled the Court's prior dismissal

22  orders. Mot., p. 5. Modern asked EHL to find a partner for the joint venture and any potential meeting locations are irrelevant because the parties met in California. Although the physical location of the pharmaceutical

23  manufacturing plant was overseas, EHL's principal place of business is in California. California is where confidential information has been misappropriated in person, via e-mails and phone calls. Pharmaniaga also

24  conflates any potential breach of contract claims under the NDA or MOC with the instant trade secrets case. Mot., pp. 5, 11-13.

25  [3] Pharmaniaga recklessly accuses EHL of "forging evidence and knowingly providing false testimony" in the arbitration. Mot., pp. 4, 6; *see also* p. 9. However, the word "forged" does not appear and is not used in the

26  ICC Arbitral Award. Pharmaniaga's erroneous assertions against EHL must be considered against the backdrop that Pharmaniaga and Modern had destroyed or made unavailable relevant computer hard drives

27  necessary for a complete, honest, and thorough forensic examination to support the arbitral panel's credibility determination. EHL was the sole party that made all relevant computer hard drives available.  In contrast,

28  Pharmaniaga and Modern refused and failed to give any indication during the arbitration of when, how, or by

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

- 6 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1  Moreover EHL's new allegations against Modern are relevant to Pharmaniaga because Pharmaniaga

2  and Modern by and through their continuing wrongful conduct, willfully and with actual knowledge, agreed

3  to and did conduct and participate in the conduct of the enterprise affairs through a pattern of racketeering

4  activity for the purposes of intentionally depriving EHL of its trade secrets, including confidential information

5  and intellectual property. *See, e.g.,* Dkt. 64, at ¶¶ 4, 10-11, 15, 223-28. Accordingly, EHL's CUTSA, DTSA

6  and RICO claims arise out of Pharmaniaga's forum-related activities.

### 3. Pharmaniaga Has Not Met Its Burden To "Present A Compelling Case" That The Exercise Of Jurisdiction Would Be Unreasonable.

9  Given that EHL has satisfied the first two prongs of the specific jurisdiction test, Pharmaniaga has the

10  burden to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."

11  *Schwarzenegger*, 374 F.3d at 802.  It does not and cannot do so.  In determining reasonableness, this Court

12  must consider seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum
> state; 2) the burden on the defendant in defending in the forum; 3) the extent
> of the conflict with the sovereignty of the defendant's state; 4) the forum
> state's interest in adjudicating the dispute; 5) the most efficient judicial
> resolution of the controversy; 6) the importance of the forum to the plaintiff's
> interest in convenient and effective relief; and 7) the existence of an
> alternative forum.

18  *Vance's Foods, Inc. v. Special Diets Europe Ltd.*, No. 2-11-cv-02934, 2012 WL 1353898, at *4 (E.D. Cal.

19  April 16, 2012), citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

20  Pharmaniaga offers only an erroneous argument that there are insufficient California and United States

21  contacts and key Pharmaniaga witnesses would be unavailable. Mot., p. 11. However, EHL, as plaintiff bears

22  the burden of deposing witnesses and collecting relevant evidence abroad. *See Genentech, Inc. v. JHL Biotech,*

23  *Inc.*, 2019 U.S. Dist. LEXIS 36140 *22 (Mar. 1, 2019). Accordingly, this argument falls short of the

24  "compelling case" of unreasonableness to defeat personal jurisdiction.

### B. Alternatively, Specific Jurisdiction Exists Under Fed. R. Civ. P. 4(k)(2).

26  For claims arising under federal law, Fed. R. Civ. P. 4(k)(2) provides that service of a summons

---

whom the pertinent computer hard drive were destroyed—a strong indicator of spoliation by Pharmaniaga and
Modern.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1   establishes personal jurisdiction over a defendant if the defendant is subject to jurisdiction in any state's courts

2   of general jurisdiction, and exercising jurisdiction is consistent with the Constitution and federal laws. *Pebble*

3   *Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). EHL has asserted claims arising under federal law

4   (*i.e.*, the DTSA and RICO) and Pharmaniaga has been served with a summons. If this Court finds

5   Pharmaniaga is not subject to personal jurisdiction in California, then Pharmaniaga is not subject to jurisdiction

6   in any state's courts of general jurisdiction and the only issue for the Court to resolve to find jurisdiction under

7   Rule 4(k)(2) is whether jurisdiction comports with due process. *L.A. Gem & Jewelry Design, Inc. v. An &*

8   *Assocs. Co. Inc.*, 17-cv-2417, 2017 WL 6209816, at \*7 (C.D. Cal. Dec. 6, 2017). On that question, the same

9   three-prong test used for specific jurisdiction in California applies for specific jurisdiction under Rule 4(k)(2),

10   but using the United States as the relevant forum. *Id.*

### 1. Pharmaniaga Expressly Aimed Activities Toward the United States.

12   Pharmaniaga traveled throughout the United States to attend meetings and a convention in pursuit of

13   new business relationships, technologies, and product ideas that it could exploit to grow and expand its

14   business. Dkt. 64, at ¶¶ 117-27. As a direct result of its efforts in the United States, Pharmaniaga began and

15   cultivated new relationships with United States businesses, including EHL, 3M, Genentech, Amgen, Pfizer,

16   and Strategy Success, though which Pharmaniaga gained access to new and proprietary technology, know-

17   how, and market information that it used to grow and expand its business. Dkt. 64, at ¶¶ 2, 17, 20-25, 28, 30-

18   33, 98, 117-28, 145. Pharmaniaga necessarily knew that harm caused by any of its misconduct stemming

19   from its new relationships would be felt by United States businesses, with whom it had traveled to the United

20   States to meet and entered into contracts with, and with which it communicated to obtain technology, know-

21   how and market information. *CollegeSource, Inc.*, 653 F.3d at 1079; *Enertrode*, 2016 WL 7475611, at \*4.

### 2. EHL's Claims Arise Out Of Pharmaniaga's United States Activities.

23   EHL's claims arise out directly from Pharmaniaga's intentional targeting and cultivating of

24   relationships with United States businesses for the purpose of gaining access to new technology, know-how,

25   and market information that Pharmaniaga could exploit to grow and expand its business. After visiting with

26   EHL in California, Pharmaniaga became smitten with EHL's technology and know-how, and engaged in an

27   on-going effort to cultivate a relationship with the Sacramento-based EHL through regular communications

28   with EHL in the United States and elsewhere so that Pharmaniaga could obtain access to and exploit EHL's

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 8 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

trade secret and proprietary technology and information. *E.g.*, Dkt. 64, at ¶¶ 26, 30,  35-6, 39, 47, 58, 80, 93, 98, 114,  120-24, 145, 187-91.  This conduct gives rise to EHL's claims.

### 3. Pharmaniaga Has Not Met Its Burden To "Present A Compelling Case" That The Exercise Of Jurisdiction Would Be Unreasonable.

Given EHL's establishment of the first two prongs for specific jurisdiction under Rule 4(k)(2), and Pharmaniaga's inability to show the exercise of jurisdiction would be unreasonable, Pharmaniaga cannot meet its burden to present a compelling case that jurisdiction would be unreasonable.  This Court thus has alternative, specific personal jurisdiction over Pharmaniaga under Rule 4(k)(2).

### C. The Forum-Selection Clause Does Not Require Dismissal Of EHL's Claims Because This Court Is The Most Appropriate Forum For EHL's Lawsuit.

Pharmaniaga argues that EHL should have filed this lawsuit against Pharmaniaga in Singapore, a location where no events relevant to this lawsuit occurred, where no damages were suffered by EHL, and where no element of any of EHL's claims accrued. Mot., pp. 11-13.

Pharmaniaga attempts to conflate a potential breach of contract claim with the tort claims at issue here. Specifically, Pharmaniaga misleads this Court and misleadingly argues that "EHL admits in the SAC that any confidential disclosures to Pharmaniaga were subject to the EHL-Pharmaniaga NDA, its forum-selection and choice-of-law clauses for Singapore." Mot., p. 11. However, Pharmaniaga misrepresents a key proposition in *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991), namely that "[t]he burden of proving an alternative forum is the defendant's and . . . the remedy must be clear before the case will be dismissed."

A party moving to dismiss based on *forum non conveniens* "bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal citations omitted). Defendants must make a "clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (internal quotation omitted). "*Forum non conveniens* is an exceptional tool to be employed sparingly, not a . . . doctrine that compels plaintiffs to choose the optimal forum for their claim." *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021**,** 1028 (N.D. Cal. 2015) (citations omitted); *see Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir.

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

- 9 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

2000).

As to the first "adequate alternative forum" element, Pharmaniaga fails to address, much less prove, that EHL's lawsuit would not be barred by Singapore courts on statute of limitations grounds—a fatal flaw in Pharmaniaga's argument.  The Ninth Circuit directs that a motion for *forum non conveniens* be denied where a lawsuit would be time-barred in the supposed alternative forum.  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011).

Nothing in the Singapore Limitation Act permits a statute of limitations to be tolled during an arbitration. *See generally*, Singapore Limitation Act, *available at* https://sso.agc.gov.sg/Act/LA1959. More specifically, Section 4(3) of the Singapore Foreign Limitation Periods Act explicitly states that foreign laws permitting statutes of limitations to be "extended or interrupted" by "proceedings from any specified jurisdiction or country" "shall be disregarded." Singapore Foreign Period Limitation Act, ch. 11A, § 4(3), *available at* https://sso.agc.gov.sg/Act/FLPA2012.  Because Singapore laws do not permit statutes of limitations to be tolled during an arbitration, EHL's Complaint would have been time-barred if it had been filed in Singapore on April 27, 2018, the date EHL filed its Complaint commencing this lawsuit.

In *Carijano*, the Ninth Circuit explained:

> The danger that the statute of limitations might serve to bar an action is one of the primary reasons for the limitation on the court's discretion with respect to the application of the doctrine of *forum non conveniens*." *Paper Operations*, 513 F.2d at 672-73; *see also Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) ("[I]f the plaintiff's suit would be time-barred in the alternative forum, his remedy there is inadequate . . . and in such a case dismissal on grounds of *forum non conveniens* should be denied unless the defendant agrees to waive the statute of limitations in that forum . . . ."); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) ("[I]f the statute of limitations has expired in the alternative forum, the forum is not available, and the motion to dismiss based on *forum non conveniens* would not be appropriate."); *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) ("[A]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum.").

643 F.3d at 1235.

Pharmaniaga has not met its "heavy burden" to demonstrate that the statute of limitations has not yet expired in Singapore.  *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 801, 802-03 (4th Cir. 2014) ("If the statute of limitations has expired in the alternative forum, the forum is typically not 'available' for purposes of the *forum non conveniens* inquiry.") (collecting cases).

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 10 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

Second, Pharmaniaga also has not met its burden to show that the balance of private and public interest factors favors dismissal. The absence of access United States and California statutory claims (*i.e.*, DTSA, RICO and CUTSA) in a Singapore tribunal would render a forum selection clause contrary to public policy. *See, e.g., Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir.2009) (refusing to enforce forum selection clause, both because the selected forum did not permit class actions, and because "together with the choice of law provision" the clause would "effect a waiver of statutory remedies"); *Robles v. Comtrak Logistics, Inc.*, No. 13-cv-00161, 2015 WL 1530510, at *6 (E.D. Cal. Apr. 3, 2015) ("[I]f the forum is not adequate, a forum selection clause that applies to a non-waivable statutory claim may, in fact, improperly compel the claimant to forfeit his or her statutory rights. In such a case, the forum selection clause is contrary to the strong public policy of California and will not be enforced.").

California courts have repeatedly emphasized California's strong public interest in protecting trade secrets and have applied CUTSA even in the face of a contrary choice of law clause. "The enactment of the Uniform Trade Secrets Act in California indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets." *Integral Dev. Corp. v. Weissenbach*, 99 Cal. App. 4th 576, 591-92 (2002); *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("California maintains a strong interest in providing an effective means of redress for its residents tortiously injured.").

The United States Patent and Trademark Office ("USPTO") has explained that "the United States is obligated to provide trade secret protection," both "[a]s a member of the World Trade Organization (WTO)" and as "a party to the Agreement on Trade Related Aspects of Intellectual Property Rights (TRIPS)." According to the USPTO, the United States fulfils its obligation "by offering trade secret protection under state laws…. The language of the Uniform Trade Secret Act is very similar to the language in TRIPS."[4] CUTSA is California's implementation of that Act, which in turn functions as the implementation of the United States' treaty obligations.

Finally, "[t]he condition precedent to [Pharmaniaga's] *forum non conveniens* argument is that the [NDA] forum clause applies to [EHL's] claims in the [SAC]. If the claims do not fall within the scope of the forum selection clause, the Court need not reach the *forum non conveniens* issue." *Telesocial Inc. v. Orange*

---

[4]*See* Trade Secret Policy of the USPTO, https://www.uspto.gov/patents-getting-started/international-protection/trade-secret-policy (last accessed April 12, 2019).

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1   *S.A.*, No. 14-CV-03985, 2015 WL 1927697, at *3 (N.D. Cal. Apr. 28, 2015).  The NDA with Pharmaniaga

2   provides that Singapore is the applicable forum ***in a contractual dispute*** – which despite Pharmaniaga's

3   attempts to conflate breach of contract and tort claims – ***it is NOT***.  Singapore is not an adequate forum because

4   it does not recognize tolling of statutes of limitations and thus EHL's DTSA, RICO and CUTSA claims would

5   be time-barred there.  Pharmaniaga has also not shown that EHL's claims would even be recognized by a

6   Singapore court.

7          Accordingly, Pharmaniaga has failed to carry its "heavy burden" to demonstrate that Singapore is an

8   adequate alternative forum.  Pharmaniaga has not demonstrated ***any*** public interest factors outweighing

9   California's and the United States' strong interests in protecting trade secrets of California and United States-

10  based companies such as EHL, that would even come close to justifying dismissal of this lawsuit on *forum*

11  *non conveniens* grounds.

12          **D.   Issue Preclusion Does Not Bar EHL's Claims Because The Tribunal's Finding Of No**
            **Jurisdiction To Decide EHL's CUTSA Claim Does Not Collaterally Estop The Merits**
13          **Of The SAC Claims.**

14          In support of its meritless issue preclusion argument, Pharmaniaga misleads this Court and claims that

15  "because the arbitral tribunal found that EHL had not provided (and Pharmaniaga had not used) any valuable,

16  confidential information, EHL is barred from attempting to prove an essential element to its CUTSA, DTSA,

17  and RICO claims." Mot., p. 15.

18          The Ninth Circuit has recognized that, "California courts will apply collateral estoppel only if certain

19  threshold requirements are met, and then only if application of preclusion furthers the public policies

20  underlying the doctrine." *In Re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2000) (internal citations omitted).  The

21  party asserting collateral estoppel must establish five elements:

22                  First, the issue sought to be precluded from re-litigation must be identical to
                    that decided in a former proceeding. Second, this issue must have been
23                  actually litigated in the former proceeding. Third, it must have been
                    necessarily decided in the former proceeding. Fourth, the decision in the
24                  former proceeding must be final and on the merits. Finally, the party against
                    whom preclusion is sought must be the same as, or in privity with, the party
25                  to the former proceeding.

26  *Id.*

27          Issue preclusion can attach "only when an issue of fact or law is actually litigated and determined by

28  a valid and final judgment, and the determination is essential to the judgment." *Hohu v. Hatch*, 940 F. Supp.

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1   2d 1161, 1167 (N.D. Cal. 2013) (internal quotation omitted).  "An arbitration decision may effect issue

2   preclusion in a later litigation only if the proponent can show with clarity and certainty that the same issues

3   were resolved." *CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (internal

4   citation and quotation omitted).

5         California courts have adopted "the rule that a private arbitration award cannot have nonmutual

6   collateral estoppel effect unless the arbitral parties so agree." *Vandenberg v. Superior Court*, 21 Cal. 4th 815,

7   836-37 (Cal. 1999).  The California Supreme Court has explained that:

8               [T]here is little basis to surmise that mere silence implies the arbitral parties'
                acceptance of nonmutual collateral estoppel.  A general rule that confirmed
9               that private arbitration awards may have such effect would thus violate the
                fundamental premise that private arbitration is a contractual proceeding
10              ***whose scope and effect are defined and limited by the parties' consent***.  For
                similar reasons, such a rule would chill, rather than promote, the voluntary
11              use of the arbitral forum as an efficient and informal alternative means of
                resolving particular controversies.
12

13  *Id.* at 833 (internal citations omitted) (emphasis in original).

14        Here, there was no agreement among EHL, Pharmaniaga and Modern that a decision by the Tribunal

15  finding that it lacked jurisdiction over EHL's CUTSA claim would collaterally estop EHL from pursuing its

16  CUTSA claim in this Court, or its DTSA and RICO claims.  Moreover, consistent with the Tribunal's

17  determination that it lacked jurisdiction to decide EHL's CUTSA claim (Dkt. 20-4, the "Award," at ¶ 5.216),

18  the Tribunal made ***no*** findings on ***any*** of the elements of EHL's CUTSA claim (or obviously any elements of

19  EHL's DTSA and RICO claims).[5]

20        Pharmaniaga makes the demonstrably false assertion that, "the Final Award issued in the London

21  arbitration between Pharmaniaga and EHL conclusively found that EHL had no trade secrets, did not give

22  them to Pharmaniaga, and/or Pharmaniaga never used them." Mot., p. 1. Contrary to Pharmaniaga's claim that

23  the Tribunal considered and rejected EHL's CUTSA claim, the Tribunal correctly recognized that it had no

24  power to "address" (*i.e.,* adjudicate) EHL's CUTSA claim and did not do so.[6] Mot., p. 14.  Because the

25  ────────────────

26  [5] Pharmaniaga also attacks EHL's jurisdictional arguments on the basis that "this Court has confirmed the
    tribunal's award and transformed it into a judgment." Mot., p. 15.  However, there was no "final judgment on
27  the merits" with respect to the trade secrets or confidential information and therefore those issues were not
    incorporated in the judgment to which Pharmaniaga refers.

28  [6] Pharmaniaga again asserts that, "[t]he arbitral tribunal rejected EHL's CUTSA claim on jurisdictional
    grounds, but also rejected EHL's claim for breach of the MOC on the merits." Mot., p. 14.  Pharmaniaga's

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

- 13 -                    OPPOSITION TO MOTION TO DISMISS
                         SECOND AMENDED COMPLAINT

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1   Tribunal found that it did not have jurisdiction to address the CUTSA claim and consequently never

2   adjudicated EHL's CUTSA "claims on the merits" (Award [Dkt. 20-4] Sec. V, p. 59, ¶ 5.216), EHL is not

3   collaterally estopped from pursuing its CUTSA, DTSA or RICO claims in this Court.

4          Pharmaniaga cites a single out of circuit case, *Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*,

5   245 F.3d 1203, 1210 (10th Cir. 2001), for the incorrect assertion that the Tribunal's dismissal of the CUTSA

6   claim for lack of jurisdiction precludes litigation of the CUTSA claim here. Mot., p. 16.  However, in

7   *Matosantos*, a plaintiff's earlier case in federal court was dismissed for lack of personal jurisdiction. *Id.* at 1206.

8   When plaintiff attempted to bring the same suit in a different federal court, it raised issues ***that were dispositive***

9   ***in the earlier personal jurisdiction analysis***. *Id.* The court held that "the doctrine of collateral estoppel

10  precludes a subsequent religitation of the same jurisdictional ***issue*** between the same parties." *Id.* at 1210

11  (emphasis in the original) (citation omitted). Importantly, the court did not hold that a dismissal for lack of

12  jurisdiction precluded claims completely unrelated to the jurisdictional issues, and it reaffirmed that "[t]he

13  provision in Rule 41(b) that dismissal for lack of jurisdiction does not operate as an adjudication on the merits

14  is not intended to change this result." *Id.* at 1209 (citation omitted).

15         Here, the Tribunal did not resolve the merits of the CUTSA claim, let alone the DTSA and RICO

16  claims, in finding that it had no jurisdiction. Final Award, ¶ 5.41, 5.216.  In fact, the Tribunal never made any

17  determinations as to the existence of EHL's trade secrets, or whether any EHL trade secrets were

18  misappropriated by Pharmaniaga and Modern.

19         Moreover, in the arbitration context, a finding of no jurisdiction over a claim renders the claim non-

20  arbitrable, meaning that it falls outside the scope of the parties' agreement to arbitrate and thus the arbitrator

21  ***lacks power*** to render a decision on the claim. The United States and the California Supreme Courts have long

22  recognized that arbitrators are powerless to render decisions on matters outside the scope of the arbitration

23  agreement. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986) ("[A]rbitration is

24  a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

25  _____

26  argument is meritless as the CUTSA claim was never litigated and EHL's MOC claim is irrelevant as this is
    not a breach of contract case. Additionally, Pharmaniaga asserts "the tribunal concluded that the alleged trade
    secrets never existed, were not in fact confidential or valuable, or that Pharmaniaga had not used them (much

27  less profited from their use)." *Id.*  However, the Tribunal, in its Award (Section V, p. 59), expressly states that
    it never made any findings on EHL's CUTSA "claims on the merits," including, most importantly, whether

28  EHL's confidential information constituted "trade secrets" under CUTSA.

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1    so to submit.") (internal quotes omitted); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak*

2    *Street*, 35 Cal. 3d 312, 323 (1983) ("The scope of arbitration is … a matter of agreement between the parties").

3         Pharmaniaga's position that the Tribunal's no jurisdiction finding as to EHL's CUTSA claim operates

4    to collaterally estop EHL as to the merits of that claim (or as to EHL's DTSA and RICO claims, which were

5    not even asserted in the ICC Arbitration) is fundamentally flawed.  It would confer the Tribunal with power to

6    decide EHL's CUTSA claim – power which the Tribunal did not legally possess and that the Tribunal

7    recognized it lacked. And, it would deprive EHL of a fair opportunity to have its CUTSA, DTSA and RICO

8    claims considered by a U.S. court.

9         **E.    The Limitations Have Not Run On EHL's CUTSA, DTSA And RICO Claims.**

10        Under the DTSA, a party must commence an action within three years of the time that the

11   misappropriation is actually discovered or should have been discovered. *See* 18 U.S.C. § 1836(d). The DTSA

12   treats a continuing violation as a single claim for the purposes of determining when an action becomes time

13   barred. *See* 18 U.S.C. § 1836(d) ("For purposes of this subsection, a ***continuing misappropriation*** constitutes

14   a single claim of misappropriation.") (emphasis added).  "Thus, the so-called discovery rule written into the []

15   DTSA tolls the statute of limitations for a party without actual knowledge of the misappropriation if there exists

16   no facts sufficient to demonstrate that the party should have discovered the misappropriation at an earlier time."

17   *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-CV-33, 2017 WL 6210920, at *8 (N.D. Iowa Dec. 8,

18   2017).  As Pharmaniaga and Modern are still using and possessing EHL's confidential information, including

19   trade secrets misappropriated from EHL, their misappropriation continues to this day and the three-year statute

20   of limitations on EHL's DTSA claims has not expired nor begun to run. Dkt. 64, at ¶¶ 10, 13, 14, 18, 208, 214,

21   236-37.

22        As to RICO, this Court in *Verrees v. Davis*, held:

23              "A pattern of racketeering activity consists of at least two acts of racketeering
                activity." ***The two acts must take place within ten years of each other***,  and
24              to constitute a pattern a plaintiff must show "that the racketeering practices
                are related, and that they amount to or pose a threat of continued criminal
25              activity." and are not merely "sporadic activity.". . . . ***RICO claims, whether***
                ***alleged under §1962(b), (c), or (d), are subject to a four year statute of***
26              ***limitations***. *The Ninth Circuit follows an "injury discovery" rule for*
                *determining when a RICO claim accrues and the statute of*
27              *limitations begins to run.  Under the "injury discovery" rule, the statute of*
                *limitations "begins to run when a plaintiff knows or should know of the*
28              *injury that underlies his cause of action." "[A] new cause of action*

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

110767410\V-1

***accrues for each new and independent injury, even if the RICO violation
causing the injury happened more than four years before.''***

No. 16-CV-01392, 2018 WL 1919824, at *9 (E.D. Cal. Apr. 24, 2018)  (emphasis added). Under RICO, a plaintiff may establish a pattern of racketeering activity by pointing to predicate acts within 10 years after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).  Courts have held that time-barred acts may serve as predicates for an otherwise timely RICO claim. *E.g., Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924-25 (3d Cir. 1992).

Under the "injury discovery" rule, because the RICO predicate acts—violations of the DTSA, including use and possession of misappropriated trade secrets[7]—are continuing to this day, causing new injury to EHL each day, a new claim "accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years ago."  Because Pharmaniaga's (and Modern's) violations of the DTSA are continuing, causing new injuries to EHL each day, EHL's RICO claims against them cannot be dismissed on statute of limitations grounds. Dkt. 64, at ¶¶ 10, 13, 14, 18, 208, 214, 236-37.

Meanwhile, the CUTSA statute of limitations is three years. Cal. Civ. Code § 3426.6 ("An action for misappropriation must be brought within three years . . . .").  Under California law, "the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974) (internal quotations omitted); *see also Marcario v. Cnty. of Orange*, 155 Cal. App. 4th 397, 399 (2007).  This tolling is applicable not only to EHL's CUTSA claim, but also to its DTSA and RICO claims.

EHL first discovered that its trade secrets had been misappropriated when Pharmaniaga, a public Malaysian company, made a public announcement with the Bursa (Malaysian stock exchange) on May 20, 2013. Dkt. 64, at ¶¶ 48, 49, 193.  This is because Pharmaniaga and Modern concealed and lied about their decision to exclude EHL from the Saudi joint venture while they continued to ask for and obtain confidential trade secret information. Dkt. 64, at ¶¶ 158-59, 162-69, 182-83.

As alleged in the SAC, EHL commenced the ICC arbitration on March 18, 2014. Dkt. 64, at ¶ 166.

---

[7] Under 18 U.S.C. §§ 1831, RICO predicate acts include not only the use of a stolen trade secret, but also each and every discrete possessing of a trade secret belonging to another. *United States v. Zhang*, No. 5:05-cr-00812, 2012 WL 1932843, at *1 (N.D. Cal. May 29, 2012).

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1    Under black letter California law, the three-year statute of limitations on EHL's CUTSA claim was *tolled* from

2    the March 18, 2014 commencement until the ICC Award was issued on November 2, 2016. "[A] tolling would

3    occur during the period plaintiff and defendants actually utilized such a preferred procedure [referring to

4    arbitration]." *Rodriguez v. S. Cal. Dist. Council of Laborers*, 160 Cal. App. 3d 956, 961 (1984); *see also*

5    *generally* Rutter Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations Ch. 6-B ¶ 6:60 ("Even when

6    arbitration is not mandatory, a tolling would occur during the period plaintiff and defendants actually used such

7    a preferred procedure.").

8        As the statute of limitations was tolled during the arbitration (a total of 960 days), the statute of

9    limitations on EHL's CUTSA claim (and its DTSA and RICO claims) would not expire until January 4, 2019

10   (793 days after November 2, 2016, when the Award was issued).[8] EHL filed its Complaint on *April 27, 2018*,

11   and amended its Complaint to add the DTSA and RICO claims on November 16, 2018, before the CUTSA

12   (and DTSA and RICO) statute of limitations expired on January 4, 2019. DTSA had not yet been enacted at

13   the time the arbitration was commenced.

14       Moreover, EHL, in good faith, commenced the ICC arbitration in London pursuant to the arbitration

15   clause contained in a Memorandum of Collaboration ("MOC") executed by EHL, Pharmaniaga and Modern.

16   *McDonald v. Antelope Valley Cmty. Coll. Dist.*, makes clear that equitable tolling applies whether the

17   alternative remedies are voluntary or required:

18           Tolling eases the pressure on parties "concurrently to seek redress in two
             separate forums with the attendant danger of conflicting decisions on the
19           same issue." By alleviating the fear of claim forfeiture, it affords grievants
             the opportunity to pursue informal remedies, a process we have repeatedly
20           encouraged. The tolling doctrine does so without compromising defendants'
             significant "interest in being promptly apprised of claims against them in
21           order that they may gather and preserve evidence" because that notice
             interest is satisfied by the filing of the first proceeding that gives rise to
22           tolling.

23   45 Cal. 4th 88, 100 (2008) (internal citations omitted).

24       Contrary to Pharmaniaga's position, this case is not where "a party [invokes] equitable tolling based

25   on its own tactical decision to sue in the wrong forum." Mot., p. 17. Instead, "[p]roceeding with this case while

26   _____

27   [8] There are 1,095 days in three calendar years. The statute of limitations ran for 302 days after the May 20,
     2013 Bursa Announcement until the arbitration was commenced on March 18, 2014. It thus could have run
     for another 793 days after the arbitration Award was issued on November 2, 2016 (for a total of 1,095 days).

28   1,095 days would have run on January 4, 2019. The Complaint was filed before then.

OPPOSITION TO MOTION TO DISMISS
                                                    SECOND AMENDED COMPLAINT

110767410\V-1

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

1  the arbitration was still pending would have risked inconsistent results" and notably, "equitable tolling may

2  extend even to the voluntary pursuit of alternate remedies." *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d. 1125,

3  1137-38 (N.D. Cal. June 30, 2009).

4       EHL reasonably believed that because the MOC's arbitration clause was the only such clause executed

5  by all three parties—all of the other prior agreements between the parties being two-party agreements—and

6  that EHL's CUTSA claim was one "arising out of or in connection with this Agreement," that EHL was

7  required to arbitrate its disputes before the ICC in London.  Not only was this conclusion reasonable, it was

8  the only conclusion that EHL believed consistent with the parties commercially reasonable and logical

9  intentions of resolving any and all disputes before the ICC in London, and not in multiple forums.

10  Pharmaniaga's Motion does not suggest, much less prove, that EHL's attempt to arbitrate its CUTSA claim

11  was in bad faith.

12       **F.**     **EHL's DTSA And RICO Claims Are Well Founded As Both Apply To Continuing**

13       **Misappropriations Of Trade Secrets, Including Use And Possession Of Trade Secrets Stolen Prior To DTSA's Effective Date.**

14       Pharmaniaga incorrectly argues that the DTSA is inapplicable here and that EHL's RICO claim (based

15  upon DTSA predicate acts) fails. Not so. The DTSA applies to continuing misappropriations of trade secrets

16  that began before the DTSA's May 11, 2016, effective date and continued thereafter.

17       In *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, the court held:

18          Congress specifically omitted the language (from the UTSA and state" trade

19          secrets laws) that would have precluded the DTSA from applying to

20          misappropriations that occurred pre-enactment. Congress also omitted the language that would have made the DTSA inapplicable to a

21          misappropriation that begins before, but continues after, the effective date. If

22          Congress had wished to prevent application of the DTSA to continuing misappropriations that began pre-enactment, it easily could have.

23  No. 16-cv-2499, 2017 WL 1105648, at *8 (E.D. Pa. Mar. 24, 2017). Likewise, the Southern District of

24  California has held:

25          ***Courts have generally "held that the DTSA applies to misappropriations***

26          ***that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date."*** In addition, "[n]othing

27          suggests that the DTSA forecloses a use-based theory simply because the trade secret being used was misappropriated before the DTSA's enactment."

28

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1

1   *Physician's Surrogacy, Inc.* v. German, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) (internal citations

2   omitted and emphasis added). Similarly, in *Space Data Corp. v. Alphabet Inc.*, the Northern District of

3   California held:

> When bringing a misappropriation claim under DTSA, a plaintiff may rely
> on one of three theories of liability: "(1) acquisition, (2) disclosure, or (3)
> use." . . . ***"[n]othing suggests that the DTSA forecloses a use-based theory
> simply because the trade secret being used was misappropriated before the
> DTSA's enactment*."** . . . ***a DTSA claim based on continuous use after
> May 11, 2016 does not require allegations of "new or different"
> misappropriation, unlike a claim based on disclosure of trade secrets.
> Indeed, courts have held that continuous use of misappropriated trade
> secrets that began prior to DTSA's enactment date can give rise to DTSA
> liability***.

11  No. 16-cv-03260, 2017 WL 9840133, at *4 (N.D. Cal. Dec. 18, 2017) (internal citations omitted and emphasis

12  added.); *see also, Genentech, Inc.*, 2019 U.S. Dist. LEXIS 36140, at *25-26; *Teradata Corp. v. SAP SE*, 2018

13  U.S. Dist. LEXIS 209872, at *27 (N.D. Cal. Dec. 12, 2018).

14         Thus, Pharmaniaga's argument that "DTSA only applies to acts of 'misappropriation' that 'occurr[ed]

15  on or after' its effective date of May 11, 2016" falls flat given clear authority that misappropriations of trade

16  secrets prior to the DTSA's enactment and continuing thereafter violate the DTSA—a RICO predicate act

17  alleged in EHL's SAC. Mot., p. 18.

18         Pharmaniaga also erroneously argues that EHL's DTSA claims are meritless, ignoring EHL's

19  allegations as to "access," "disclosure," and "use." Mot., p. 19.   EHL has shown that Pharmaniaga

20  misappropriated EHL's trade secrets in person, telephone and e-mail, and are still in possession of, and using

21  EHL's trade secrets. Dkt. 64, at ¶¶ 10, 13, 14, 18, 208, 214, 236-37.  There is no doubt that Pharmaniaga has

22  been in "continuing use" of EHL's trade secrets and has misappropriated EHL's trade secrets by disclosing

23  and using the information for its own benefit and advancement, all while being aware of its duties and

24  obligations with respect to the confidential trade secrets. Dkt. 64, at ¶¶ 42-45, 34, 35, 80, 92.

25         Finally, despite Pharmaniaga's erroneous contentions, EHL's DTSA claim supports a RICO claim

26  because Pharmaniaga's actions with respect to EHL's trade secrets constitute a "continuing misappropriation."

27  Mot., p. 19.  Pursuant to 18 U.S.C. §§ 1831, RICO predicate acts include each and every discrete copying,

28  downloading, uploading, sending, communicating, conveying, and ***possessing*** a trade secret belonging to

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA  94105
(415) 267-4000

- 19 -

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1   another. *Zhang*, 2012 WL 1932843, at *1 (finding defendant guilty of theft and unauthorized transmission,

2   possession, and copying of trade secrets) (emphasis added).

3        Pharmaniaga has continued to misappropriate EHL's trade secrets since 2011. The trade secrets

4   "engage in, or affect in some significant way, commerce directly involving the United States" because the

5   trade secrets were created and shared in California and the damages have been and continue to be felt in

6   California. California, and the United States as demonstrated by its enactment of the DTSA itself, both have

7   strong public interests in ensuring that its trade secrets statutes are not violated with impunity by foreign

8   businesses to the detriment of its citizens. Accordingly, EHL's DTSA and RICO claims are well founded.

9                              **CONCLUSION**

10       For all of these reasons, Pharmaniaga's Motion to Dismiss should be denied.

11  Dated: April 18, 2019                Respectfully submitted,

12

13                                       DENTONS US LLP

14                                       */s/ Andrew S. Azarmi*
                                         _____

15                                       Andrew S. Azarmi

16                                       LAW OFFICES OF CHARLES H. CAMP, P.C.

17

18                                       */s/ Charles H. Camp*
                                         _____

19                                       Charles H. Camp
                                         (as authorized on April 18, 2019)

20

21

22

23

24

25

26

27

28

DENTONS US LLP
ONE MARKET PLAZA, SPEAR TOWER, 24TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
(415) 267-4000

OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

110767410\V-1