ANDREW S. AZARMI, CASB No. 241407
THOMAS R. WORGER, CASB No. 311312
DENTONS US LLP
One Market Plaza
Spear Tower, 24th Floor
San Francisco, CA  94105
United States
Telephone:     415 267 4000
Facsimile:      415 267 4198

Attorneys for Plaintiff E*HEALTHLINE.COM, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E*HEALTHLINE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PHARMANIAGA BERHAD, a Malaysian entity, and MODERN INDUSTRIAL INVESTMENT HOLDING GROUP COMPANY LIMITED, a Saudi Arabian entity,<br><br>Defendant. | Case No. 2:18-cv-01069-MCE-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Date:      February 20, 2020<br>Time:     2:00 p.m.<br>Dept:      Courtroom 7<br>Judge:    Morrison C. England, Jr.<br><br>Date Action Filed:  April 27, 2018 |

- 1 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT –
Case No. 2:18-cv-01069-MCE-EFB

Plaintiff E*HealthLine.com, Inc. ("EHL") files this Memorandum of Points and Authorities in Support of its Motion for Default Judgment (the "Motion") and respectfully represents as follows:

## I. INTRODUCTION

This action arises out of Defendants Pharmaniaga Berhad ("Pharmaniaga") and Modern Industrial Investment Holding Group Company Limited's ("Modern") misappropriation of EHL's trade secrets and confidential information—all of which EHL provided pursuant to written contracts containing strict confidentiality provisions and in connection with a Saudi Arabian joint venture (the "JV" or "Joint Venture") to "construct and manage a pharmaceutical production/manufacturing facility to be located in Saudi Arabia with the primary aim of supplying various pharmaceutical products to the Saudi Arabia [sic] as well as to the Middle East/North Africa markets" as well as "such other business arrangements as may be mutually agreed upon in writing by the Parties from time to time" (the "Pharmaceutical Project").

An arbitral panel declined jurisdiction over these claims, which lead to EHL filing this lawsuit on April 27, 2018. Dkt. 1. EHL served the summons and complaint on Defendant Modern pursuant to Federal Rules of Civil Procedure 4(f)(2)(C)(ii) and 4(h)(2) on June 1, 2018. Dkt. 30 at 2, ¶ 4, Ex. A. EHL also served the summons and complaint on Modern pursuant to Federal Rules of Civil Procedure 4(f)(2)(A) and 4(h)(2) on June 1, 2018. Dkt. 32 at 1, ¶¶ 2-3. EHL filed proofs of service with this Court on July 23, 2018, and on August 21, 2018. Dkt. 30, 32. The latest possible date for Modern's answer or otherwise responsive pleading was August 13, 2018. Fed. R. Civ. P. 12(a)(1)(A).

On August 29, 2018, EHL filed a Request to Enter Default Judgment. Dkt. 34. On October 24, 2018, the Court issued an Order denying EHL's request without prejudice. Dkt. 39. EHL thereafter filed a Motion for Default addressing the issues raised in the Court's Order on November 14, 2018. Dkt. 42 (erroneously identified as "Motion for Default Judgment"). On December 12, 2018, EHL submitted supplemental information in support of its Motion for Default. Dkt. 45. The Court granted EHL's motion and directed the clerk of the Court to enter default against Modern. Dkt. 51. On January 7, 2019, the clerk entered a default against Modern. Dkt. 55. As of this date, nothing further had been heard from Modern or anyone acting on its behalf. Dkt. 34-1 (Azarmi Declaration in

support of request for default), ¶ 5. EHL now seeks entry of default judgment against Modern.

## II. SUMMARY OF FACTS

This matter arose out of a tripartite joint venture agreement between EHL, Pharmaniaga, and Modern to build a pharmaceutical manufacturing facility in Saudi Arabia and to market pharmaceutical products in Saudi Arabia, and throughout the Gulf Cooperation Council ("GCC") and Middle Eastern North Africa ("MENA") countries of Algeria, Bahrain, Egypt, Iraq, Jordan, Kuwait, Lebanon, Libya, Morocco, Oman, Palestine, Qatar, Sudan, Syria, Tunisia, Turkey, and the United Arab Emirates. See Complaint ("Compl."). Dkt. 64 at ¶ 26.

On June 20, 2011, EHL and Pharmaniaga entered into a Mutual Non-Disclosure Agreement. Dkt. 64 at ¶ 34. Likewise, on July 25, 2011, EHL and Modern entered into a Non-Disclosure, Non-Circumvention, Non-Competition Agreement. Dkt. 64 at ¶ 36. Based on Pharmaniaga's and Modern's representations, over the next six months, EHL shared extensive, secret information with defendants, including at a two-day meeting in Sacramento, California. Dkt. 64 at ¶¶ 81-140, *see also* Dkt. 64 at ¶¶ 119-120. On October 27, 2011, EHL, Pharmaniaga, and Modern executed a Memorandum of Collaboration ("MOC") to detail their joint venture terms. Dkt. 64 at ¶¶ 40-45. The trade secrets provided are EHL's in proprietary information and database, which were collected and compiled from business intelligence concerning pharmaceutical companies, market research, market forecast, detailed drug list and detailed private/retail prescription data. EHL continued to send confidential documents, including Joint Venture draft, a draft framework for Feasibility Study requirements, documents required for the Saudi Land Authority, and documents required for product licensing. Dkt. 64 at ¶¶ 81-100.

But the venture was not to be. Slowly but surely, Pharmaniaga and Modern continued to solicit business confidential and proprietary information "market research, market forecast, detailed drug list and detailed private/retail prescription data" from EHL, all while cutting EHL out of substantive discussions about the venture's progress. Dkt. 64 at ¶¶ 102-186. Their deceit culminated on May 20, 2013, when Pharmaniaga publicly announced that Pharmaniaga and Modern had entered into a Joint Venture, without EHL, for an initial duration of 15 years, with 50/50 shareholdings for the

- 3 -

1  construction and operation of a pharmaceutical manufacturing plant in Saudi Arabia.  Dkt. 64 at ¶ 193.

2  On April 27, 2018, EHL filed its Complaint against Pharmaniaga and Modern.  Dkt. 1.  EHL
3  filed its First Amended Complaint on November 16, 2018.  Dkt. 43.  EHL filed its Second Amended
4  Complaint on March 11, 2019.  Dkt. 64.

## III. ARGUMENT

### a. Procedural Requirements For Default Judgment

Federal Rules of Civil Procedure Rule 55(b)(2) allows for an entry of default judgment for a party's failure to appear in the lawsuit, if the person against whom default judgment is sought is not a minor or incompetent person.  The Ninth Circuit has endorsed three procedural prerequisites for the purpose of effecting default judgment.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  First, the Court must have subject matter jurisdiction over the action and personal jurisdiction over the defaulting party.  Second, service of process on the defaulting party must have been proper.  Third, the clerk of the Court must have already entered default pursuant to Fed. R. Civ. P. 55(a).

Modern has failed to appear.  Modern is not a minor, nor is Modern an incompetent person.  Dkt. 34-1 (Azarmi Declaration in support of request for default), ¶ 6  EHL has satisfied the procedural requirements necessary for this Court to effect default judgment against Modern.

### i. This Court has subject matter jurisdiction over the action and personal jurisdiction over Modern for the purpose of Fed. R. Civ. P. 55(b)(2).

The Court has subject matter jurisdiction because the Second Amended Complaint asserts a federal question.  EHL's Second Amended Complaint brings two causes of action under federal law in this action:  the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c).  Dkt. 64 at ¶¶ 198-228.  The operative complaint asserts two federal claims, and this Court therefore has subject matter jurisdiction over this action.  28 U.S.C. § 1331.  *See also*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 574 (9th Cir. 2004) (finding that any "non-frivolous" assertion of a federal claim establishes subject-matter jurisdiction).

This Court additionally has personal jurisdiction over Modern for the purpose of awarding default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  In the context of a motion for default judgment,

- 4 -

a plaintiff may satisfy its burden of proving personal jurisdiction with a *prima facie* showing, resting its argument on the pleadings, affidavits, and other written materials. *High Tech Pet Prod., Inc. v. Juxin Pet Prod. Co.*, No. 1:10-CV-00547 LJO GS, 2013 WL 1281619, at *4 (E.D. Cal. Mar. 27, 2013), citing *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).  Here, this Court exercises specific jurisdiction over Modern pursuant to Modern's actions directed toward the forum through its intentional misappropriation of trade secrets in the forum, and specifically through an employee located in the forum who took part in the harmful conduct alleged by EHL.

Specific jurisdiction is found where the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  The Ninth Circuit has held that specific personal jurisdiction exists where:  (1) a defendant purposefully availed itself, (2) the claim arises out of defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Elec. Forntier Found. V. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 934 (N.D. Cal. 2017).

### 1.  Modern purposefully availed itself to California.

The first prong requires that "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (per curiam).  Modern has failed to appear in this matter and default has been entered against it.  EHL need only make a prima facie showing that each of these factors have been met, which it can.

"Intent" in this context "refer[s] to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell, Inc. v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (citations omitted).  "[M]isappropriation of trade secrets is an intentional tort." *O2 Micro Intern. Ltd. v. Monothlithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1091 (N.D. Cal. 2006) (citations omitted).  EHL has alleged that Modern communicated through telephone and e-mail for over the course of a year, including the participation of a Modern representative in California, for the purpose of misappropriating EHL's trade secrets to

EHL's detriment and Modern's gain.

Additionally, Modern's actions were expressly aimed at the forum state. By definition, "[t]ortious conduct is 'expressly aimed' at a forum state 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant known to be a resident of the forum state.'" *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, No CV1305504SJOMANX, 2014 WL 12589333, at *7 (C.D. Cal. Feb. 14, 2014), quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The Supreme Court has long held that this does not necessarily require a party's physical presence in the forum "as long as 'a commercial actor's effects are "purposefully directed" toward residents of another state.'" *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1160 n. 26 (S.D. Cal. 2018), quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In the very e-mail introducing Modern's CEO to EHL, Modern was informed that EHL is a California company. Dkt 56-2, Ex. 10. Additionally, representatives of Modern were acutely aware that EHL is a California company located in Sacramento, California. Dkt 56-2, Ex. 12.

Finally, the Ninth Circuit has "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). See also *Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-cv-02458, 2016 WL 7475611, at *4 (N.D. Cal. Dec. 29, 2016) (same). EHL's principal place of business is in this forum, and this is where EHL suffered damages. As shown above, Modern was well-aware that EHL is a California company and would suffer damages in California.

**2. EHL's claims arise from Modern's activities related to California.**

For the purpose of effecting default judgment, EHL has satisfied the *prima facie* element for the second prong of establishing specific jurisdiction. In the Ninth Circuit, this is referred to as a "but for" test, meaning that a nexus exists between a defendant's contact with the forum and the cause of action. *See, e.g.*, *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1354 (Fed. Cir. 2003), citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995) (test satisfied where defendant entered into

NDA with plaintiff and had numerous communications with forum-based plaintiff regarding alleged misappropriated trade secrets); *Verma v. Okev*, No. 2:13-CV-00865-MCE, 2013 WL 6887532, at *5 (E.D. Cal. Dec. 31, 2013) (test satisfied where alleged misappropriation was against forum-based plaintiff). *See also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), aff'd sub nom. *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015) (test failed where defendant's only contact with forum was sale of underlying product to third-party, who then committed tortious conduct).

Modern was aware that EHL is a company based in California, as was made clear in their numerous communications. See, e.g., Dkt 56-2, Exs. 10-12. EHL was contacted by an individual who was acting as an authorized representative for Modern, and through him Modern requested and misappropriated EHL's trade secrets. The trade secrets that EHL alleges were misappropriated were based in California with EHL. But for Modern's misappropriation of trade secrets from a forum-based plaintiff (i.e., EHL), there would be no cause of action. Thus the second prong is satisfied.

### 3. The exercise of jurisdiction is reasonable.

Where a plaintiff has proven the above two prongs, the burden shifts to the defaulting party to establish that the exercise of jurisdiction is not reasonable. See *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Regardless, a forum has a manifest interest is providing an effective means of relief for its residents tortuously injured by others. *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987). EHL is a company incorporated in California and was harmed in California. California has a manifest interest in this matter.

### ii. This Court has determined that service on Modern was proper.

EHL served the summons and complaint on Defendant Modern pursuant to Federal Rules of Civil Procedure 4(f)(2)(C)(ii) and 4(h)(2) on June 1, 2018. Dkt 5. EHL also served the summons and complaint on Modern pursuant to Federal Rules of Civil Procedure 4(f)(2)(A) and 4(h)(2) on June 24, 2018. Dkt. 32 at 1, ¶¶ 2-3. The latest possible date for Modern's answer or otherwise responsive pleading was August 14, 2018. Fed. R. Civ. P. 12(a)(1)(A). As of October 18, 2019, Modern failed to file its answer or otherwise responsive pleading. On August 29, 2018, EHL filed a Request to Enter

Default Judgment. Dkt. 34. After the Court initially denied EHL's request without prejudice, EHL filed a Motion for Default urging the Court to reconsider the issue. Dkt. 39, 42, 45. The Court granted EHL's motion and found that service had been proper, thus satisfying the second prerequisite. Dkt. 51. The clerk of the Court entered default against Modern on January 7, 2019, and satisfying the third prerequisite. Dkt. 55. As of this date, nothing further had been heard from Modern or anyone acting on its behalf. Dkt. 34-1 (Azarmi Declaration in support of request for default), ¶ 5.

### iii. The clerk of the Court has entered default against Modern.

Following this Court's determination that Modern was properly served, this Court further Ordered that the clerk of the Court enter default against Modern. Dkt. 51. The clerk of the Court entered default against Modern on January 7, 2019, thus satisfying the third prerequisite. Dkt. 55.

### b. Legal Standard For Default Judgment

Once the foregoing procedural elements have been satisfied, whether to enter a default judgment is within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising their discretion, the Ninth Circuit has directed district courts to consider the following seven factors ("the Eitel factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003), quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). Upon entry of default, all well-pleaded facts in the complaint are taken as true, save those related to the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

### i. Prejudice to EHL.

EHL will be prejudiced if default is not entered because it has sustained injury as a result of the actions of Defendant and without default judgment, Plaintiff will be left without a judicial resolution

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT –
Case No. 2:18-cv-01069-MCE-EFB

to its claims and without other recourse for recovery. See *Bay Area Painters and Tapers Pension Trust Fund v. Ibarra*, 2011 WL 6056462 at *4 (N.D.Cal. Nov. 1, 2011); *ESET, LLC v. Bradshaw*, 2011 WL 2680497, *2 (S.D.Cal. July 8, 2011) ("In this case, Plaintiff would suffer prejudice if the motion were denied; Plaintiff has no other recourse for recovery. This factor therefore favors entry of default judgment.").

### ii. Merits of EHL's substantive claim and sufficiency of the Complaint.

The second and third Eitel factors "require that Plaintiff's allegations state a claim upon which it may recover." *Adobe Systems Inc. v. Kern*, 2009 WL 5218005, *3 (N.D.Cal. Nov. 24, 2009) (internal quotation omitted).

To establish a claim for trade secret misappropriation under CUTSA, EHL must demonstrate that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sunbelt Rentals, Inc. v. Victor*, No. C 13-4240 SBA, 2014 WL 492364, at *5 (N.D. Cal. Feb. 5, 2014), quoting *CytoDyn of N.M., Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008) (internal quotation marks omitted). A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) [d]erives independent economic value, or actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). The Defend Trade Secrets Act is virtually the same, likewise defining "improper use" as including "misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). See also *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (treating analysis of DTSA and CUTSA claims as identical).

The Second Amended Complaint sufficiently alleges that EHL owned trade secrets that were, and continue to be, used by Defendants through improper means. EHL alleges that it entered into a "Non-Disclosure, Non-Circumvention and Non-Competition Agreement" with Modern. Dkt. 64 ¶ 36. Thereafter, Modern, pursuant to the Agreement, was provided access to numerous EHL trade secrets,

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT –
Case No. 2:18-cv-01069-MCE-EFB

including "confidential drug lists, supplier lists, manufacturing details and market data, with highly technical information." *Id.*, ¶ 30.  Over the course of a year, EHL provided Modern access to its trade secrets via reports and documents, as well as through demonstrations and teleconferences, repeatedly reminding Modern of its obligations pursuant to the agreement. *Id.*, ¶¶ 57, 58, 61, 98, 99, 125, 143, 144, 149, 155.  Nonetheless, EHL alleges that Modern and Pharmaniaga used and continue to use its trade secrets in violation of confidentiality and non-disclosure agreements signed with both parties. *Id.*, ¶¶ 229-240.

To further establish a claim under the Racketeer Influenced Corrupt Organization Act, EHL must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005), quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotations omitted).  A party's theft of trade secrets through electronic means in violation of a non-disclosure agreement is a predicate act. *See e.g.*, 18 U.S.C.A. § 1961 (defining racketeering activity as including violations of 18 U.S.C. §§ 1331 and 1332, "relating to economic espionage and theft of trade secrets"); *SolarCity Corp. v. Pure Solar Co.*, No. CV1601814BRODTBX, 2016 WL 11019989, at *7 (C.D. Cal. Dec. 27, 2016) (finding basis for RICO claim with employee theft of employer trade secrets via digital download and in violation confidentiality agreement).

As shown above, EHL has sufficiently pled the necessary predicate act of theft of its trade secrets by Modern.  This was accomplished through the mutual conduct of Defendants Pharmaniaga and Modern, who entered into non-disclosure agreements with EHL, and then proceeded to solicit highly confidential materials, including EHL's trade secrets for the ostensible purpose of pursuing a joint venture, while planning to cut EHL out of the final joint venture.  Dkt. 64 at ¶¶ 102-186

### iii. Sum of money at stake.

As to the amount of money at stake, entry of default judgment is appropriate where "the sum of money at stake is tailored to the specific misconduct of the defendant." *Baskin-Robbins Franchising LLC v. Chun*, No. 18-CV-05476-BLF, 2019 WL 3207777, at *6 (N.D. Cal. July 16,

- 10 -

1    2019), quoting *Bd. of Trustees v. Core Concrete Const., Inc.*, No. C 11-02532 LB, 2012 WL 380304,
2    at *4 (N.D. Cal. Jan. 17, 2012), report and recommendation adopted, No. C 11-02532 JSW, 2012 WL
3    381198 (N.D. Cal. Feb. 6, 2012).  This factor weighs in favor of default judgment where the amount
4    sought is "facially reasonable" based on the action.  *Francois & Co., LLC v. Nadeau*, No.
5    EDCV1800843SJOPLAX, 2019 WL 994402, at *9 (C.D. Cal. Jan. 8, 2019).

6         Where a party has failed to appear, a full calculation of damages is often difficult, if not
7    impossible, to ascertain.  In the context of actions for misappropriation of trade secrets, the Court may
8    consider the expenses incurred by Plaintiff in research and development to create the subject trade
9    secrets "as an appropriate substitute of [Plaintiff's] actual losses."  *Leatt Corp. v. Innovative Safety*
10   *Tech., LLC*, No. 09-CV-1301-IEG (POR), 2010 WL 11442713, at *4-5 (S.D. Cal. Aug. 24, 2010),
11   citing *Digital Dev. Corp. v. Int'l Memory Sys.*, No. 72-55, 1973 WL 19875, at *5 (S.D. Cal. Oct. 24,
12   1973).

13        As discussed at length in Plaintiff's Second Amended Complaint, Defendants solicited and
14   misappropriated EHL's trade secrets and confidential information through repeated and ongoing
15   actions of intentional deceit.  EHL's trade secrets, including a proprietary database of information,
16   were created at great expense over a number of years.  As explained in the accompanying Declaration
17   of Dr. Yousry Mekhamer, the historic cost of creating and maintaining these trade secrets, at the time
18   that EHL's relationship with Defendants completely ended, totaled $55,575,000.00.  Declaration of
19   Dr. Yousry Mekhamer, ¶ 5, Ex. A.  This amount is reasonable considering the profits made in the
20   pharmaceutical industry and in the underlying proposed project.  *See, e.g.*, *Ischemia Research and*
21   *Education Foundation v. Pfizer Inc., et al.*, No. 1-04-CV026653, 2008 WL 5545344 (Santa Clara
22   County, Super. Ct. December 22, 2008) (awarding $38,737,065.00 for misappropriation of trade
23   secrets, based on defendants' 11 to 15 inquiries of plaintiff's database for purpose of manipulating
24   clinical trial of single new drug); *Epic Systems Corporation v. Tata Consultancy Services, et al.*, No.
25   3:14-cv-00748 (W.D. Wis. Mar. 22, 2019) (upholding jury verdict awarding $140 million for
26   misappropriation of trade secrets, based on costs of research and development of information in
27   plaintiff's medical database wrongfully used by defendant).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT –
Case No. 2:18-cv-01069-MCE-EFB

### iv. Possibility of dispute about material facts.

As all well-pled allegations of fact are taken as true, EHL has satisfied the fifth Eitel factor. See *Adobe Systems*, 2009 WL 5218005 at *6.

### v. Whether default was due to excusable neglect.

There is no evidence that the failure of Defendant to respond was due to excusable neglect. The Defendant was validly served via substitute service. See Proof of Service (Dkt. No. 4). A sworn proof of service constitutes "prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Securities & Exchange Comm'n v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (emphasis added). Federal Rule of Civil Procedure 4(e)(1) allows for the "borrowing" of a state service of process provision. California allows for substitute service at a usual place of business on "a person apparently in charge." C.C.P. § 415.20(b). Federal Rule of Civil Procedure 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists v. Eclat Computerized Technologies*, 840 F.2d 685, 688 (9th Cir. 1988).

### vi. Public policy favoring decisions on the merits.

The only Eitel factor that weighs in favor of the Defendant is the last, the policy favoring decisions on the merits. Of course, this factor arguably always weighs against the entry of default judgment, and moreover, "[a] defendant's failure to answer the plaintiff's complaint makes a decision on the merits impractical, if not impossible." *Adobe Systems*, 2009 WL 5218005 at *6 (citation omitted). Finally, this factor, standing alone, is not enough to preclude default judgment. *Id.* When all of the Eitel factors are considered, it is clear that default judgment is appropriate in this case.

## IV. CONCLUSION

As EHL properly served the Summons and Complaint on Modern not once, but twice, and the time for Modern to plead or defend has lapsed, EHL requests that the Court enter default judgment against Modern.

DATED: January 10, 2019

                                          /s/ Andrew Azarmi
                                          ANDREW S. AZARMI
                                          THOMAS R. WORGER
                                          DENTONS US LLP
                                          Attorneys for Plaintiff E*HEALTHLINE.COM, INC.

- 13 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT –
Case No. 2:18-cv-01069-MCE-EFB
113463761