UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E*HEALTHLINE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHARMANIAGA BERHAD, and MODERN INDUSTRIAL INVESTMENT HOLDING GROUP COMPANY LIMITED,<br><br>Defendants. | No. 2:18-cv-1069-MCE-EFB<br><br><br>FINDINGS AND RECOMMENDATIONS |

This case is before the court on plaintiff's motion for default judgment against Modern Industrial Investment Holding Group Company Limited ("Modern").[1] ECF No. 81. For the reasons stated below, it is recommended the motion be denied for lack of subject matter jurisdiction.[2]

/////

/////

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19). *See* 28 U.S.C. § 636(b)(1).

[2] The court determined that oral argument would not materially assist in the resolution of the motion. Accordingly, the matter was ordered submitted on the briefs, ECF No. 88. *See* E.D. Cal. L.R. 230(g).

1

I.     Background

Plaintiff E*Healthline ("EHL") filed this action against defendants Pharmaniaga Berhad ("Pharmaniaga") and Modern, claiming defendants misappropriated trade secrets and confidential information. ECF No. 1. Pharmaniaga, a Malaysian corporation, moved to dismiss the original complaint for lack of subject matter jurisdiction. ECF No. 20. That motion was granted and the complaint was dismissed with leave to amend. ECF No. 38. Additionally, after Modern, a privately-owned company established under the laws of Saudi Arabia, failed to timely respond to the complaint, plaintiff moved for entry of its default. ECF No. 34. That request was denied because plaintiff failed to demonstrate that Modern had been properly served.[3]  ECF No. 39.

Thereafter, plaintiff renewed its request for entry of Modern's default. ECF No. 42. It also filed a first amended complaint (ECF No. 43), which drew another motion to dismiss for lack of personal jurisdiction (ECF No. 46). Plaintiff's renewed request for entry of default was granted, and Modern's default was entered on January 7, 2019. However, plaintiff again failed to demonstrate that the court had personal jurisdiction over Pharmaniaga, and the claims in the first amended complaint against that defendant were dismissed. Plaintiff was granted leave to amend as a final opportunity do so. ECF No. 63.

Plaintiff subsequently filed its second amended complaint (ECF No. 64), which is the operative complaint. That complaint alleges defendants misappropriated plaintiff's confidential information in violation of the Defendant Trade Secrets Act of 2016, 18 U.S.C. §§ 1936, *et seq*.; Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961, *et seq*.; and California Misappropriation of Confidential Information Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1. ECF No. 64 at 51-58.

According to the second amended complaint, plaintiff previously entered into commission agreements with two independent contractors who were to assist plaintiff in identifying business opportunities. *Id* ¶¶ 52, 53. In February 2011, one of the independent contractors, Chris Crockett, notified plaintiff of a pharmaceutical manufacturing opportunity in Saudi Arabia. *Id*.

---

[3] The order also noted that the court was not "at all convinced that it would have jurisdiction over Modern even if service has been properly effectuated." ECF No. 39 at 1.

¶ 54. Through Mr. Crocket, plaintiff arranged a telephonic conference with Modern to discuss the potential pharmaceutical project. *Id*. ¶¶ 54-57. Plaintiff subsequently contacted Pharmaniaga to inquire whether it would be interested in a joint venture in Saudi Arabia. *Id*. ¶¶ 62-63. Over the next several months, the parties exchanged emails and conducted teleconferences to discuss the possibility of establishing a pharmaceutical manufacturing plant in Saudi Arabia. *Id*. ¶¶ 64-116, 122, 125-38. To facilitate the proposed venture, plaintiff and Modern entered into a non-disclosure agreement in July 2011. *Id*. ¶¶ 26, 36. Thereafter, plaintiff disclosed to the defendants confidential information and trade secrets. *Id*. ¶¶ 81-139.

On October 27, 2011, the parties met in Frankfurt, Germany, and entered in a Memorandum of Collaboration ("MOC"), which included stringent confidentiality and non-competition provisions. *Id*. ¶¶ 40-41, 140. The parties continued to communicate about the joint venture through 2012 and early 2013. However, in May 2013, Pharmaniaga publicly announced that it had entered into a joint venture with Modern to construct and operate a pharmaceutical manufacturing plant in Saudi Arabia. *Id*. ¶¶ 193. Prior to this announcement, plaintiff was not aware that Pharmaniaga and Modern had been working to exclude plaintiff from the project. *Id*.

II.   Discussion

Plaintiff again confronts the fundamental and threshold barrier to proceeding on these claims: whether this court has personal jurisdiction over Modern. ECF No. 81-1 at 5-7. Plaintiff claims that the court may exercise specific jurisdiction over Modern because its actions were directed towards the forum through its intentional misappropriation of trade secrets. *Id*.

A.   Relevant Legal Standard

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). In deciding a motion for default judgment, a "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). When, as here, the court evaluates personal jurisdiction without an evidentiary hearing, the plaintiff's burden is light: "the plaintiff need only make 'a prima facie showing of jurisdictional facts . . . .'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th

3

Cir. 2011). The uncontroverted allegations in the complaint are taken as true, and factual disputes are resolved in the plaintiff's favor. *Id*.

California's long-arm statute, California Civil Procedure Code section 410.10, authorizes the court to exercise personal jurisdiction to the extent permitted by federal due process. *Id*. at 1074. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984); *CollegeSource*, 653 F.3d at 1074. If the nonresident defendant's contacts with the state are not sufficiently continuous or systematic to give rise to "general personal jurisdiction," the defendant may still be subject to "specific personal jurisdiction" on claims arising out of defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). Specifically, a "nonresident defendant's discrete, isolated contacts with the forum" will support "specific jurisdiction" over that defendant "on a cause of action arising directly out of its forum contacts." *CollegeSource*, 653 F.3d at 1076.

B.     Analysis

Plaintiff does not contend that Modern's contacts with California are sufficiently continuous or systematic as to give rise to general jurisdiction. Rather, it argues that the court has specific jurisdiction because its claims arise out of Modern's contacts with California. ECF No. 81-1 at 4-7. Accordingly, the court only addresses whether Modern's contacts are sufficient to support specific jurisdiction in this forum.

Whether specific jurisdiction exists is determined by a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

/////

4

*Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted).

Furthermore, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (citations and quotation omitted). "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Id.* (citations and quotations omitted).

"'[P]urposeful availment' and 'purposeful direction' are distinct concepts. Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Globel Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, ---F.3d---, 2020 WL 5035813, at *4 (9th Cir. 2020). But under both concepts, the central inquiry is whether "defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Globel Commodities*, 2020 WL 5035813 at *4 (quoting *Burger King*, 471 U.S. 474-75) (some quotations omitted); *see Burger King*, 471 U.S. 462 at 475 (citations and quotations omitted) (first prong "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.").

Under the purposeful direction test, also referred to as the "effects test," "[t]he defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004).

Plaintiff does not allege Modern maintains a place of business in California or that it has ever been licensed to do business in the state. Instead, it claims that over the course of a year,

5

1  Modern communicated with plaintiff by telephone and email, including exchanges involving a
2  Modern representative located in California.  ECF No. 81-1.  Plaintiff further contends that the
3  purpose of these communications was to misappropriate plaintiff's trade secrets for Modern's
4  gain.

5  For purposes of the first prong of the effects test, an "intentional act" means that the
6  defendant acted with the "intention to perform an actual, physical act in the real world."
7  *Schwarzenegger*, 374 F.3d at 806.  Here, Modern arguably engaged in an intentional act by
8  entering into the MOC for the purpose of establishing a joint venture with plaintiff.  But as
9  explained below, plaintiff fails to establish that Modern's actions were directed at the forum state,
10  California, and thus fails to satisfy the second prong.

11  The second prong considers whether defendant's tortious actions were "expressly aimed at
12  the forum."  *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  Evaluation of whether actions
13  are expressly aimed at the forum "'depends, to a significant degree, on the specific type of tort or
14  other wrongful conduct at issue.'"  *Id*. (quoting *Schwarzenegger*, 374 F.3d at 807).  Here, the
15  court must evaluate whether Modern's alleged acts of misappropriation of plaintiff's trade secrets
16  were expressly aimed at California.

17  This inquiry "must focus on the defendant's contacts with the forum state, not the
18  defendant's contacts with a resident of the forum."  *Id*. (citing *Walden v. Fiore*, 571 U.S. 277,
19  284-85 (2014) ("The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is
20  'the relationship among the defendant, the forum, and the litigation.'").  Accordingly, "mere
21  injury to a forum resident is not a sufficient connection to the forum."  *Walden v. Fiore*, 571 U.S.
22  277, 290 (2014).  Instead, the alleged injury is "relevant only insofar as it shows that the
23  defendant has formed a contact with the forum State."  *Id*.

24  According to plaintiff, Modern expressly aimed its conduct at California because it
25  engaged in wrongful conduct targeted at plaintiff, whom Modern knew was located in California.
26  ECF No. 81-1 at 6.  While the second amended complaint does allege that Modern knew plaintiff
27  was a business in California, it fails to set forth sufficient allegations that, if accepted as true,
28  /////

1 demonstrate that Modern expressly aimed its conduct related to the misappropriation of plaintiff's
2 confidential information at California.

3 Modern's use of email and telephone to communicate, from Saudi Araba, with plaintiff in
4 California does not qualify as purposeful activity for purposes of specific jurisdiction. *See Roth v.*
5 *Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ("Both this court and the courts of California
6 have concluded that ordinarily 'use of the mails, telephone, or other international communications
7 simply do not qualify as purposeful activity invoking the benefits and protection of the [forum]
8 state.'").

9 Plaintiff also argues that Modern misappropriated its confidential information "through an
10 employee located in the forum." *See* ECF No. 81-1 at 5. Specifically, plaintiff alleges that
11 Modern had a "consultant," Ms. Elizabeth O'Neill, located in the San Francisco Bay Area. ECF
12 No. 64 ¶ 3. But the point of this allegation is left undeveloped. It is true that "[f]or purposes of
13 personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*,
14 911 F.2d 1357, 1362 (9th Cir. 1990). And "[a]n agent is one who acts on the principal's behalf
15 and subject to the principal's control." *United States v. Bond*, 608 F.3d 495, 506 (9th Cir. 2010).
16 But the allegations concerning Ms. O'Neill are vague at best.

17 Plaintiff asserts that "[f]rom California, with the participation of Ms. O'Neill, who was
18 also in California, [plaintiff] disclosed trade secrets and confidential information to" defendants.
19 *Id*. ¶ 30. Ms. O'Neill was allegedly present on over 50 calls and received numerous emails
20 concerning plaintiff's business relationship with defendants. *Id*. ¶ 8. She was also allegedly "a
21 key participant" in initial discussions between Modern and Pharmaniaga. *Id*. ¶ 73. In July 2011,
22 one of plaintiff's agents allegedly "wrote to Modern's CEO and others, including Ms. O'Neill in
23 California, that plaintiff was working to identify a company interested in a joint venture
24 opportunity in Saudi Arabia." Lastly, plaintiff claims that in August 2011, its agent "wrote to
25 Modern's CEO, Ms. O'Neill with Modern's MAP Capital in California, and" plaintiff about
26 setting up a meeting to discuss the next steps in their joint venture. *Id*. ¶ 97. That email also
27 suggested setting up a telephonic conference with Modern's CEO, plaintiff's chairman, Ms.
28 O'Niell, and plaintiff's agent. *Id*. ¶ 97.

These vague and conclusory allegations fail even to show that Ms. O'Niell acted as Modern's agent. While the second amended complaint refers to Ms. O'Niell as Modern's "consultant," it does not allege she is employed by Modern or authorized to act on Modern's behalf. Rather, plaintiff alleges she is employed by "MAP Capital," an entity described merely as Modern's affiliate.[4] *Id.* ¶ 73. The remaining allegations mentioning Ms. O'Niell only reflect that she received emails exchanged between plaintiff, Modern, and Pharmaniaga, and she was present during telephonic conferences between these parties. Significantly, plaintiff's allegations fail to demonstrate Ms. O'Niell performed any specific act on behalf of Modern, let alone an act related to the misappropriation of plaintiff's confidential information. Accordingly, Ms. O'Niell's contacts with California cannot be imputed to Modern for purposes of assessing its minimum contacts. But more fundamentally, the only acts identified are email and telephone conversations which, as discussed above, simply cannot satisfy the test for "purposeful activity invoking the benefits and protection of the [forum] state." *Roth v. Garcia Marquez*, 942 F.2d at 622.

Thus, plaintiff has failed to show that Modern performed any significant activities directed at California. Consequently, it has failed to meet its burden of making a prima facie showing of jurisdictional facts necessary to hale Modern into this court. *CollegeSource*, 653 F.3d at 1073.

III. Conclusion

For the reasons stated above, it is hereby RECOMMENDED that plaintiff's motion for default judgment (ECF No. 81) be denied for lack of personal jurisdiction.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

---

[4] The complaint contains no allegations concerning Modern's relationship with MAP Capital.

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 11, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE