UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E*HEALTHLINE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHARMANIAGA BERHAD and MODERN INDUSTRIAL INVESTMENT HOLDING GROUP COMPANY LIMITED,<br><br>Defendants. | No.  2:18-cv-01069-MCE-EFB<br><br>**ORDER** |

In this case Plaintiff E*Healthline ("EHL") pursued causes of action for misappropriation of trade secrets and confidential information, arising out of a memorandum of collaboration for a potential joint venture to develop a pharmaceutical facility in Saudi Arabia, against Defendants Pharmaniaga Berhad ("Pharmaniaga") and Modern Industrial Investment Holding Group Company Limited ("Modern") (collectively, "Defendants").  Presently before the Court is Pharmaniaga's Motion for Attorneys' Fees (ECF No. 100).  For the following reasons, that Motion is GRANTED.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

1

2

**BACKGROUND**[2]

3      EHL is a Delaware corporation that provides healthcare and pharmaceutical

4  information management technology software and services and is headquartered in

5  Sacramento, California.  Pharmaniaga is a Malaysian corporation headquartered in that

6  country and engaged in the business of development and sales of pharmaceutical

7  products, medical products, and hospital equipment.  Modern is a privately-owned

8  investment company established under the laws of and headquartered in Saudi Arabia.

9      In April 2011, EHL contacted Pharmaniaga regarding whether Pharmaniaga

10  would be interested in a joint venture.  In the ensuing months, EHL and Defendants

11  discussed the possibility of constructing and managing a pharmaceutical manufacturing

12  plant in Saudi Arabia.

13      As part of the parties' deliberations over the proposed venture, EHL and

14  Defendants signed non-disclosure agreements, containing a forum-selection clause

15  which provided for dispute resolution in Singapore, under Singaporean law.

16  Pharmaniaga executed a Non-Disclosure Agreement ("NDA") in Malaysia on June 17,

17  2011.  In addition, EHL and Modern entered into a "Non-Disclosure, Non-Circumvention

18  and Non-Competition" Agreement on July 25, 2011.

19      The majority of communications regarding the proposed joint venture occurred

20  over the phone or teleconference or via email.  In addition, Pharmaniaga repeatedly

21  declined EHL's requests to meet in California, instead suggesting London and Riyadh as

22  more convenient locations.  Eventually, Pharmaniaga agreed to one in-person meeting

23  to take place in Sacramento, California, and Pharmaniaga sent two now former

24  employees to California over one weekend.  EHL did not share confidential information

25  at that meeting, nor was any agreement reached.  EHL does not contend that any

26

27  ───────────────────
[2] The parties are intimately familiar with the history of this litigation and of the related case
Pharmaniaga Berhad v. Eheathline.com, Inc., Case No. 2:17-cv-02672-MCE-EFB ("Confirmation Case").
Accordingly, the Court recounts the facts only generally here and may rely on additional facts in the
analysis as they are relevant.

28

1  improprieties or deception occurred over this meeting.

2       Eventually, on October 27, 2011, EHL and Defendants entered into a

3  Memorandum of Collaboration ("MOC") in Germany.  The MOC contained confidentiality

4  obligations and provided for dispute resolution in London under the Rules of Arbitration

5  of the International Chamber of Commerce.  Sometime later, Modern informed

6  Pharmaniaga that it was no longer doing business with EHL.  According to

7  Pharmaniaga, the MOC then lapsed after 30 days and so did the joint venture between

8  the three parties.

9       In May 2013, Pharmaniaga announced that it had entered into a new joint venture

10  with Modern to explore the potential construction and operation of a pharmaceutical

11  facility in Saudi Arabia.  EHL was not aware it had been excluded from the project until

12  Pharmaniaga's announcement.  Regardless, this new joint venture was eventually

13  abandoned by Defendants as well.  They did not build a pharmaceutical facility and no

14  sales or revenues resulted.

15       A year later, in May 2014, EHL filed a request for arbitration in London against

16  Defendants alleging misappropriation of confidential information, breaches of various

17  contracts, and common law tort claims under the laws of England and Wales as provided

18  by the MOC.  All claims were fully litigated with the parties offering extensive briefing,

19  exhibits, experts, and various reports.

20       After two years of arbitration, the Tribunal issued an award on November 2, 2016.

21  The Tribunal rejected EHL's claims and found Defendants to be both the prevailing

22  parties and entitled to attorneys' fees and arbitration costs totaling GB£ 2,000,000.00

23  (plus interest) and US$ 872,953.00 (plus interest).

24       Despite having initiated the arbitration itself, EHL nonetheless refused to pay the

25  award ordered and, in December 2017, Pharmaniaga was forced to bring the

26  Confirmation Case in this Court for the purpose of enforcing the final award.  On

27  September 7, 2017, this Court issued an order in that case confirming the award and

28  directing EHL to make the ordered payments.

1    Subsequently, on April 27, 2018, EHL initiated this separate action, pursuing

2    claims under both federal law and California's Uniform Trade Secrets Act ("CUTSA").[3]

3    Prior to that, however, on March 18, 2018, EHL's counsel emailed counsel for

4    Pharmaniaga threatening to file the Complaint in this action unless Pharmaniaga agreed

5    to engage in settlement discussions as to the confirmation award in the Confirmation

6    Case.  Pharmaniaga advised in response that "[it was] willing to consider reasonable

7    proposals from EHL as to how much it is willing to pay . . . .  But if EHL has something

8    else in mind—a walkaway, or that Pharmaniaga will pay EHL—then settlement

9    discussions are not likely to be realistic or fruitful."  Blunschi Decl., ECF No. 100-1, ¶ 12,

10   ECF No. 100-12, Ex. 11.  Before discussions could begin, and without offering to pay

11   any portion of the judgment in the companion case, EHL went ahead and filed its

12   Complaint.[4]

13   Substance aside, EHL alleged nothing beyond the foregoing facts to tie

14   Defendants to California.  There had been no other business contacts between

15   Defendants and the State of California.  Defendants were never authorized to do

16   business in California and never had an agent for the service of process within the state.

17   They never solicited business in California, never signed any contract in California, never

18   had any employee based here, and never recruited any employee in this state.  Finally,

19   Defendants never owned, leased, rented, or otherwise, any real property in California

20   and never maintained offices in California.  Accordingly, after several rounds of motions,

21   this Court dismissed EHL's claim against Defendants for lack of personal jurisdiction.[5]

---

[3] EHL had raised a CUTSA claim before the Tribunal that was rejected on jurisdictional grounds. The Tribunal also rejected on the merits the misappropriation claims EHL brought under English law.

[4] EHL then used its new lawsuit to argue that the Tribunal's award was not final in the Confirmation Case and to take the position that the motion to confirm should be denied and the award vacated.  See Confirmation Case, ECF No. 48-1, at 2 n.2, 10-11.  This Court rejected the argument that the award should be "vacated because the arbitrators determined they lacked jurisdiction over some (but not all) claims" as "contrary to common sense" because "it would open the door for parties seeking to initiate arbitration proceedings to include claims over which there is clearly no jurisdiction to protect any potentially adverse award from eventually being confirmed."  Id., ECF No. 54, at 10-11.

[5] The Court twice granted EHL the opportunity to amend its pleadings, but EHL never added any materially different allegations with respect to jurisdiction.  It did, however, add causes of action under the

4

1      Pharmaniaga then filed a Motion for Attorneys' Fees (ECF No. 100), which this

2  Court granted (ECF No. 109).  EHL appealed, and the appellate court affirmed the

3  dismissals but vacated and remanded the fee award for this Court to make factual

4  findings and explain its legal conclusions.  In keeping with that Order, the Court does so

5  now.

**ANALYSIS**

### A.    Entitlement to Fees[6]

10      Pharmaniaga argues, and EHL does not dispute, that it is the prevailing party for

11  fee shifting purposes.  Pharmaniaga's Mot., ECF No. 100, at 7-8.  The Court agrees.

12  See Amphastar Pharm. Inc. v. Aventis Pharma SA, 856 F.3d 696, 709-10 (9th Cir. 2017)

13  (concluding resolution of jurisdictional arguments in favor of a party entitled it to

14  prevailing party status when circumstances indicated they won a significant victory and

15  permanently changed the parties' legal relationship).

16      Under CUTSA, "[i]f a claim of misappropriation is made in bad faith, a motion to

17  terminate an injunction is made or resisted in bad faith, or willful and malicious

18  misappropriation exists, the court may award reasonable attorney's fees and costs to the

19  prevailing party."  Cal. Civ. Code § 3426.4.  Similarly, the DTSA provides that "if a claim

20  of the misappropriation is made in bad faith, which may be established by circumstantial

---

federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., ("DTSA") and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961, et seq. ("RICO").  See ECF Nos. 43, 64.  The Court eventually granted without leave to amend Pharmaniaga's motion to dismiss EHL's Second Amended Complaint finding a lack of personal jurisdiction on September 11, 2019.  Pharmaniaga also argued for dismissal on several other grounds that the Court did not address.  On October 5, 2020, the Court denied EHL's motion for default judgment as to Modern and dismissed Modern on the same basis as well.

[6] The Court has considered and now rejects EHL's argument that this fee motion was untimely.  A cursory review of the docket makes it appear that Judgment was entered in this case on October 5, 2020.  ECF No. 94.  That Judgment was not served on the parties, however, and thus cannot operate to start any applicable clock.  Instead, Judgment was actually entered on November 4, 2020.  ECF No. 96.  The text of this latter docket entry indicates this judgment was entered on October 5, 2020, but it is clear that such was not actually the case.  Instead, the Judgment was signed on November 4, 2020, and entered that same day.  Accordingly, timing of the instant Motion as well as the timing of EHL's notice of appeal should be calculated from that later date.

1   evidence, a motion to terminate an injunction is made or opposed in bad faith, or the

2   trade secret was willfully and maliciously misappropriated, award reasonable attorney's

3   fees to the prevailing party."  18 U.S.C. § 1836(b)(3)(D).  "The California Court of Appeal

4   has interpreted the statute's 'bad faith' element to require 'objective speciousness of the

5   plaintiff's claim . . . and its subjective bad faith in bringing or maintaining the claim.'"

6   CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1111 (9th Cir. 2007)

7   (quoting Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249,

8   1262 (2002)); see also Swarmify, Inc. v. Cloudflare, Inc., No. C 17-06957 WHA, 2018

9   WL 4680177, at *2 (N.D. Cal. Sept. 28, 2018) (applying the same test to CUTSA and

10   DTSA claims for attorneys' fees).  Both prongs are met here.

11         **1.    Objective speciousness**

12        EHL's claims were objectively specious for a number of reasons.  First, each

13   Complaint was specious on its face because it was clear under the law at the time that

14   there was no personal jurisdiction over either Defendant.  See Walden v. Fiore, 571 U.S.

15   277 (2014).  The fact that the appellate court affirmed this Court's findings on this point

16   in an unpublished memorandum disposition shows that the legal decision rested on a

17   straight-forward application of existing case law.  EHL thus wasted the time of the

18   parties, this Court, and the Ninth Circuit by pursuing jurisdictional arguments it knew

19   could not carry the day.

20        Second, there could be no misappropriation in the first place when EHL's theory

21   was that Defendants used vague categories of trade secrets to do absolutely nothing.

22   More specifically, despite multiple opportunities, EHL continues to argue that if

23   Defendants had used its trade secrets, it would have resulted in a profitable joint

24   venture—that is, if Defendants had used EHL's confidential information to build a Saudi

25   Arabian pharmaceutical factory, they would have benefited financially.  EHL has never,

26   however, alleged that Defendants actually used or disclosed any of EHL's confidential

27   information.  Absent such allegations, no misappropriation claim could have moved

28   forward under any of EHL's legal theories.

Third, and similarly, although the Tribunal did not reach the merits of EHL's CUTSA claim, it did resolve issues critical to the current misappropriation claims against EHL. "Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (2015). EHL is estopped from pursuing conflicting findings here and thus cannot establish the predicate elements of any of its claims. See Pharmaniaga's Third Mot. Dismiss, ECF No. 65-1, at 14 (cataloguing Tribunal findings).

Finally, EHL's legal DTSA and RICO theories were themselves inherently flawed. The DTSA was not passed until 2016 and acted prospectively only. See Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381-82 (May 11, 2016) ("The amendments made by this section shall apply with respect to any misappropriation of a trade secret…for which any act occurs on or after the date of the enactment of this Act."). EHL did not allege any acts of misappropriation that took place in or after 2016 and thus could not state a claim under the DTSA as a matter of law. Since the DTSA claim was the only predicate for EHL's RICO claim, the RICO claim was fatally flawed as well. Both of these claims are thus specious on their faces.

### 2.    Bad faith

EHL's conduct through the entire history of this and the Confirmation Case is steeped in bad faith. The Court agrees with Pharmaniaga's assessment of the following facts for the reasons set forth in Pharmaniaga's papers. EHL initiated this action to coerce Pharmaniaga to settle the Confirmation Case. Pharmaniaga never would have been forced to bring the Confirmation Case in the first place, however, if EHL had not been doing everything in its power to avoid paying the valid and supposedly self-executing Final Award. At the time EHL made its settlement demand in the Confirmation Case by threatening to file this action, it was abundantly clear that there was no merit to the arguments it was pursuing in the Confirmation Case, but EHL's goal was nonetheless to avoid paying Pharmaniaga anything. It was also clear for the reasons set forth above that the claims in the instant case bordered on frivolous. Even worse, EHL

had to have known that: (1) its claims here were legally unsupported; and (2) because the Tribunal had already determined EHL's theories of liability necessarily relied on forged evidence and falsehoods, there was no factual basis for EHL's causes of action either.  Finally, EHL completely ignored the substance of this Court's dismissal orders in this case and failed to add any facts material to the jurisdictional analysis in its amended pleadings.  It chose instead to add meritless causes of action that Pharmaniaga had no choice but to address through further motion practice.

It is clear to this Court that EHL, having been handed a decisive loss by the Tribunal, proceeded to do everything in its power to avoid paying the award against it and to attempt to wear Defendants down in the fanciful hope that payment could be put off forever or negotiated away.  Unfortunately, EHL's motives were transparent, and it succeeded only in compounding its own injury.  Given EHL's bad faith in pursuing this action, the Court finds the imposition of attorneys' fees entirely appropriate.

## B.    Reasonableness of Fees

The Court determines the reasonableness of attorneys' fees by calculating a "lodestar" and "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate."  McCown v. City of Fontana Fire Dep't, 565 F.3d 1097, 1102 (9th Cir. 2009).  The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter."  Hensley v. Eckerhart, 461 U.S. 424, 431 (1983) (citations and quotation marks omitted).  However, in calculating the lodestar, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"  McCown, 565 F.3d at 1102 (quoting Hensley, 461 U.S. at 434).  Although district judges "need not, and should not, become green-eyeshade accountants," Fox v. Vice, 563 U.S. 826, 838 (2011), the court should provide some indication of how it arrived at its conclusions, see Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("When the district court makes its award, it must explain how it came up with the amount.").  This Court's local rules

8

1  elaborate on factors the Court shall consider:

2  > In fixing an award of attorneys' fees in those actions in which
3  > such an award is appropriate, the Court will consider the
   > following criteria:

4  > (1) the time and labor required of the attorney(s);

5  > (2) the novelty and difficulty of the questions presented;

6  > (3) the skill required to perform the legal service properly;

7  > (4) the preclusion of other employment by the attorney(s)
8  > because of the acceptance of the action;

9  > (5) the customary fee charged in matters of the type involved;

10 > (6) whether the fee contracted between the attorney and the
   > client is fixed or contingent;

11 > (7) any time limitations imposed by the client or the
12 > circumstances;

13 > (8) the amount of money, or the value of the rights involved,
   > and the results obtained;

14 > (9) the experience, reputation, and ability of the attorney(s);

15 > (10) the "undesirability" of the action;

16 > (11) the nature and length of the professional relationship
17 > between the attorney and the client;

18 > (12) awards in similar actions; and

19 > (13) such other matters as the Court may deem appropriate
   > under the circumstances.

20 E.D. Cal. Local R. 293(c).  On balance, the above factors favor the conclusion that

21 Pharmaniaga's fee request is reasonable.

22      EHL's initial Complaint in this action set forth only one claim, but Pharmaniaga

23 could not limit briefing on its initial motion to dismiss to that discrete substantive area of

24 the law.  Indeed, to ignore procedural defenses would have amounted to malpractice on

25 the part of its counsel.  Pharmaniaga was thus also reasonably required to research and

26 develop its arguments going to jurisdiction, improper forum, collateral estoppel, and

27 statutes of limitations.  Each of these arguments not only required counsel to gain the

28 requisite legal expertise with regard to a foreign client, but also required delving into the

1  extensive factual record spanning this case, the Confirmation Case, and the international

2  arbitration to determine how exactly the proceedings overlapped.  Given that the

3  Tribunal's Final Award was itself 174 pages long, and the underlying record developed

4  during a two-year arbitration was obviously much more voluminous, even having

5  familiarity with the underlying proceeding this would have been a painstaking process.

6  Moreover, Pharmaniaga had to prepare additional factual affidavits going to its contacts

7  (or lack thereof) with this forum and had to anticipate and prepare for EHL's potential

8  counter-arguments.  Given the quality of Pharmaniaga's motion and thoroughness of the

9  supporting record filed with the Court, the Court finds Counsel's expenditure of hours

10 more than reasonable (i.e., 63.2 partner hours, 144.4 senior associate hours, 119.5

11 junior associate hours, and 30.6 professional staff hours).[7]

12       Only a portion of this work would have carried over to challenging EHL's First

13 Amended Complaint ("FAC").  This is because even though EHL did not materially

14 change the jurisdictional facts going to the Court's prior order, it still made substantial

15 changes to its Complaint, not the least of which was adding two federal causes of action

16 under DTSA and RICO.  EHL thus put Pharmaniaga back through the ringer, making it

17 start from scratch on those claims.  In addition, Pharmaniaga still had to compare the

18 FAC to the Tribunal Award and the record to ensure the veracity of its procedural

19 arguments.  It also had to review and address a declaration and exhibits from EHL's

20 counsel that totaled roughly 200 pages and that this Court ended up striking as "wholly

21 improper."  See Confirmation Case, ECF Nos. 56-1, 57, 62 at 2 n.1.  Nor is it relevant

22 that the Court decided Pharmaniaga's prior motion solely on jurisdictional grounds.  It

23 would not have been wise for Pharmaniaga to limit its second motion to only those

24 arguments reached by the Court, but the fact that Pharmaniaga cut its partner and

25 senior associate hours considerably and primarily utilized junior associates indicates it

26 _____

27       [7] The Court is not persuaded that the hours are unreasonable because the Motion produced was only twenty pages long and did not result in oral argument.  The Court limited all moving papers to twenty pages.  See ECF No. 8 at 5.  The Court is also of the opinion that it takes more time, rather than less, to adequately present one's arguments is such truncated fashion.  Finally, the fact that no oral argument was

28 required shows just how successful Pharmaniaga was in doing so.

1   was utilizing much of its work product from its prior briefing in addressing EHL's FAC.

2   The Court thus finds the additional hours expended on the second round of briefing to be

3   reasonable as well (i.e., 34.2 partner hours, 74.4 senior associate hours, and 124.1

4   junior associate hours).

5          Finally, with respect to its third round of briefing, directed at EHL's Second

6   Amended Complaint that did not this time add any new claims, Pharmaniaga expended

7   substantially less hours.  The Court finds these hours reasonable because Pharmaniaga

8   could not be expected in good faith to submit the same motion to dismiss directed at the

9   FAC as to the SAC without again going through the record and the allegations to

10  determine what new allegations, if any, might be material and to analyze how its

11  argument were affected.  Even if the answer was that not much needed to be adjusted,

12  that could not be determined in a vacuum and it required the attention of legal counsel.

13  The relatively minimal expenditure of attorney hours in finalizing this last motion was also

14  appropriate (i.e., 20.9 partner hours, 41 senior associate hours, 33.8 junior associate

15  hours, and 4.2 professional staff hours).  In fact, even EHL itself begrudgingly

16  acknowledges that Pharmaniaga "showed some restraint in its third motion."  EHL's

17  Opp'n, ECF No. 104, at 11.

18         Finally, under these circumstances, the Court determines the rates charged by

19  Pharmaniaga's counsel and that Pharmaniaga seeks to recover here are imminently

20  reasonable.  This is not an ordinary case that might often be litigated in this district.  As

21  Pharmaiaga argues, "[t]his lawsuit was a collateral attack on a collateral attack" of a

22  binding award issued in an international arbitration.  Pharmaniaga's counsel has

23  represented it from the outset, has successfully defended it overseas before an

24  international tribunal and effectively sought confirmation of that award here, halfway

25  around the world.  Pharmaniaga was entitled to rely on that same counsel in defending

26  against EHL's instant action as well, and the rates charged by counsel are commiserate

27  with reasonable rates charged by similar counsel in other such cases.  See Confirmation

28  Case, ECF No. 78 (approving comparable rates in the companion case in this district);

see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., No. 4:14-MD-2541-CW, 2017 WL 6040065, at *9 (N.D. Cal. Dec. 6, 2017) (approving rates "within the range of $200 to $1080 charged by attorneys in California in 2015"); Nitsch v. DreamWorks Animation SKG Inc., No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving rates between $275 and $1,200 per hour).  Given the long relationship between Pharmaniaga and its counsel, the skill required to defend against a multi-layered attack on a dispute already resolved on an international level, the customary fee in such matters, and the high level of success achieved, this case presents a unique set of circumstances under which Pharmaniaga has shown the rates of its counsel were appropriate.  It nonetheless bears emphasizing that the Court is cognizant that the hours and rates it is sanctioning here are much higher than those normally approved by this Court and in this District.  Given the factual and procedural circumstances cited above and the rates awarded for similarly experienced counsel in a neighboring district, however, the Court finds that the requested rates are appropriate in this very specific case.  With that said, this case is an outlier and absent exceptional circumstances like the ones that underlie this litigation, the Court is unlikely to approve similar rates in future cases.[8]  Pharmaniaga is thus awarded the entirety of its requested fees.

**CONCLUSION**

For the reasons just stated, Pharmaniaga's Motion for Attorneys' Fees (ECF No. 100) is GRANTED.  EHL is directed to pay Pharmaniaga £363,331 in fees.

IT IS SO ORDERED.

DATED:  July 14, 2023

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] The Court previously declined to award sanctions against EHL's counsel.  See ECF No. 109 at 2. It again declines to do so here.